**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Billy Randolph SMITH, Defendant–
Appellant.**

No. 00–5704.

United States Court of Appeals,
Sixth Circuit.

Sept. 25, 2001.

Before KRUPANSKY, SUHRHEINRICH, and SILER, Circuit Judges.

KRUPANSKY, Circuit Judge.

The defendant-appellant, Billy Randolph Smith ("Smith" or "the defendant"), has challenged his 150–month imprisonment

sentence imposed following his guilty plea to seven felony counts under 18 U.S.C. §§ 2422, 2423, and 2252, which stemmed from his sexual relations with two female minors.[1] The defendant has argued that the sentencing court erroneously assessed "career offender" status against him, and further unjustifiably enhanced his penalty for distributing pornographic images of an underaged girl via the Internet and engaging in a pattern of sexually abusing children. Additionally, for the first time on appeal, Smith has contended that the district judge neglected to state adequate reasons for sentencing him at the high end of the applicable guidelines sentencing range.

During June 1998, Smith commenced regular correspondence, via instrumentalities of interstate communications including computerized electronic mail ("e-mail") and the telephone, with an adolescent girl identified in the trial court record as "K.H.." At that time, K.H., a Maryland citizen, was 16 years of age, whereas Smith, then an Alabama resident, was 42 years old and the father of a teen-aged daughter. Initially, their long-distance relationship consisted of sexually charged conversations and exchanges of explicit nude photographs. However, in early December 1998, the two "friends" agreed to meet at a Holiday Inn motel near the girl's residence. On Sunday, December 8, 1998, Smith and K.H., who by this date was 17 years old, engaged in sexual activity, including cunnilingus and genital intercourse, inside a room at that motel.

Subsequently, Smith, in late December 1998, after relocating his domicile from Albertville, Alabama to Dyersburg, Tennessee, and without the girl's knowledge, traveled to a Days Inn motor lodge in Maryland with an intent to rendezvous with K.H.. However, on this occasion, K.H. resisted Smith's overtures. On December 27, 1998, Smith, after locating K.H. at a shopping mall, pressured her into meeting with him at the motel. During that liaison, Smith presented K.H. with a necklace, a bracelet, and two tee-shirts. Nonetheless, despite Smith's bids to purchase her continuing cooperation, the schoolgirl attempted to permanently terminate her relationship with the middle-aged Smith, which precipitated a violent argument. During that fracas, Smith verbally abused the juvenile, spat at her, physically restrained her to prevent her departure, and slammed her automobile's door on her leg as she entered it.

In early January 1999, notwithstanding Smith's demonstrated character and menacing behavior, K.H. naively resumed her long-distance correspondence with her exploiter. Smith told K.H. that he had purchased an engagement ring for her, and that he would finance her college education so that she could leave her parents. In mid-January 1999, Smith again traveled to Maryland to physically violate K.H.. During Smith's stay at the local Days Inn, K.H. performed fellatio upon him, twice engaged in coitus with him, and tolerated his digital penetration of her vagina. However, irrespective of their erstwhile intimacy, Smith physically and verbally assaulted K.H. when she attempted to depart the motel room. Among other things, he obstructed her exit, violently shoved her into a door, and dragged her to the bed whereupon he restrained her mobility by sitting on her, which caused her to "cry hysterically."

---

1. The federal indictment against Smith also asserted a criminal forfeiture charge, developed below.

In February 1999, Smith returned to the Days Inn hostelry. On February 13, 1999, K.H. orally stimulated Smith's genitals, and copulated with him, at that situs. Although Smith became enraged when the girl resisted his painful efforts to immerse his entire hand inside her vagina, to sodomize her anus, and to ejaculate inside her mouth, K.H. nonetheless assented to his marriage proposal after Smith gifted her with a gold and diamond engagement ring. However, approximately one week following that encounter, the repentant female informed Smith once again, via telephone, that their intimate relationship was ended. On that occasion, K.H. evidenced a firm resolve to permanently disassociate herself from the defendant.

During the ensuing weeks, the frustrated Smith launched a "carrot-and-stick" campaign to win his target's renewed acquiescence. His efforts included the delivery of several floral arrangements to K.H., coupled with death threats and declarations of intent to publish naked photographs of the schoolgirl on the world wide web unless she resumed gratifying his demands. Nonetheless, K.H. steadfastly refused to relent.

In a quest to further pressure the girl, or alternatively to attain revenge against her, Smith, while deceptively posing as K.H., offered, via e-mail, to supply sexually explicit photographs of K.H. to several of her friends. Unbeknownst to Smith, a youthful recipient of his fraudulent and malevolent electronic messages alerted K.H. to his actions. The victim then contacted the police.

The Maryland State Police Department assigned Trooper Brian Moser ("Moser") of its Computer Crimes Unit to conduct an undercover investigation of Smith's activities. Moser established electronic contact with Smith using an alias, "David Wiggins," a fictional sixteen-year-old classmate of K.H.'s at Brunswick High School. Posing as the nonexistent "Wiggins," the investigator expressed to Smith a desire to "ruin [K.H.'s] life." Convinced that "Wiggins" was a youth possessed of a kindred malicious spirit, Smith transmitted four smutty photographs of K.H. to his fictitious compatriot's e-mail account, accompanied by instructions to distribute them throughout the school building together with the rumor that K.H. had carnal relations with adult men whom she had met on the Internet, and to deliver prints of the vulgar pictures to K.H.'s parents and her employment location.

In the meanwhile, Smith, acting in the guise of K.H., fabricated a web page on which the secondary student purportedly solicited sex from both male and female visitors. One mendacious posting on that Internet site advertised for a girl to participate in a three-way orgy with K.H. and an unnamed "great older guy" from Tennessee. Trooper Moser, now posing as "Stephadeus," a fictitious fifteen-year-old female, responded positively to that proposal. Smith, while pretending to be K.H., replied to that cyber-message by inviting "Stephadeus" to contact Smith for "phone sex" or to arrange a physical union. Smith reinforced his proposition by transmitting lewd images of K.H. and himself to the e-mail account which Moser had opened for his "Stephadeus" alter ego. Concurrently, the defendant sent a digitalized image of himself, along with his telephone number, to a "bait" web address which Moser had constructed using K.H.'s name.

On May 27, 1999, at 8:00 a.m., two FBI agents and four local police officers, supported by a computer technician, executed a warrant search of Smith's residence in Dyersburg, Tennessee. Those investigators discovered Smith in the company of an adult male (Barry Pope) and an adoles-

cent female (identified in the trial court record as "V.N."). An exploration of Smith's computer hard drive and data storage disks disclosed that he had downloaded numerous pornographic depictions of under-aged females, including some who appeared pre-pubescent, performing various lascivious acts. Interviews of the house's occupants revealed that Smith had enticed V.N. to travel from Cleveland, Ohio; that Smith knew her tender age (seventeen); and that he had fornicated with her. Although the defendant initially asserted that V.N. had traveled to Tennessee by interstate bus, subsequent investigation proved that he had transported her from Cleveland to Dyersburg in his personal vehicle.

On September 2, 1999, a federal grand jury charged Smith with seven felony offenses, to wit: (1) persuading, inducing, enticing, and coercing V.N., during the period April 1999 to May 27, 1999, to travel interstate for the purpose of engaging in sexual intercourse illegalized by Tenn.Code Ann. § 39–13–506 (18 U.S.C. § 2422(a)); (2) using interstate Internet and telephonic communication instrumentalities, during the interval beginning in April 1999 and ending on May 27, 1999, to persuade, induce, entice, and coerce V.N. to engage in unlawful sexual intercourse (18 U.S.C. § 2422(b)); (3) transporting V.N. over state boundaries, between April 1999 and May 27, 1999, with the intent of committing illegal sexual acts with her (18 U.S.C. § 2423(a)); (4) using interstate Internet and telephonic means to persuade, induce, entice, and coerce K.H. to perform fellatio upon him in violation of Md.Code Ann. Art. 27, § 554 (18 U.S.C. § 2422(b)); (5) using a computer on approximately May 20, 1999 to electronically transmit, in interstate commerce, a visual image of

K.H. engaging in sexually explicit conduct (18 U.S.C. § 2252(a)(1)); (6) knowingly receiving, during the period June 1998 to May 27, 1999, a visual depiction, which had been shipped in interstate commerce, of K.H. engaging in sexually explicit conduct (18 U.S.C. § 2252(a)(2)); and (7) knowingly possessing, during the period December 1998 to May 27, 1999, seven computer disks plus a hard drive which retained visual depictions, which had been transmitted in interstate commerce, of minors performing sexually explicit acts (18 U.S.C. § 2252(a)(4)(B)). In addition, the indictment's ultimate count (no. 8) claimed criminal forfeiture of Smith's personal property connected to the crimes alleged above, including his personal computer and associated equipment, and his 1993 four-door Mercury Grand Marquis automobile (18 U.S.C. § 2253).

On February 25, 2000, the defendant executed a written plea agreement pursuant to Fed.R.Crim.P. 11, whereby he pleaded guilty to each felony charge asserted in the indictment, and agreed to forfeit the personalty targeted in count 8, in exchange for the government's pledge to forbear any request for an upwards sentencing departure. On April 6, 1999, the probation office completed its presentence investigation report ("PSR") for the defendant, which disclosed, among other things, that Smith had incurred at least three prior sex-related convictions in Alabama, namely (1) attempted sexual misconduct and (2) first degree attempted sodomy, resulting from Smith's January 23, 1990 violent rape of a twenty-five-year-old woman, during which assault he inflicted several knife wounds upon his victim, for which he was sentenced on October 29, 1990 to serve ten years of imprisonment (initially suspended);[2] and (3) an additional charge

---

2. The PSR revealed that the suspension of Smith's sentence was later revoked, as ex-

plained below.

of second degree rape committed on May 25, 1992 upon a fourteen-year-old girl, which earned the defendant, on June 11, 1995, a term of fifteen years in the state reformatory, which was modified on June 21, 1995 to three years in penal custody with twelve years suspended.[3]

On May 12, 2000, the presiding judge conducted a sentencing hearing, which encompassed sworn testimony from the victim detailing Smith's sundry acts of violence against her, including physically restraining her, shaking her, grabbing her arm, throwing her on the motel bed, slamming her automobile's door on her leg, and transmitting genital warts to her. Overruling Smith's objection, the sentencing jurist concluded that Smith qualified as a career offender, thus triggering the highest possible criminal history category (VI). Furthermore, rejecting Smith's opposition, the trial judge imposed a five-point enhancement to Smith's offense level for distributing pornographic material, plus an additional five-point enhancement for engaging in a pattern of abuse or exploitation of a minor, which, when cumulated with the defendant's uncontested offense level points, and after deduction of three points for acceptance of responsibility, produced a total offense level of 26. Smith's criminal history category of VI, matched with his offense level of 26, yielded a guidelines sentencing range of 120 to 150 months in the custody of the United States Bureau of Prisons. U.S.S.G. § 5A (Sentencing Table).

On May 18, 2000, the district court journalized its judgment of conviction and sentence against Smith, which, among other things, condemned Smith to serve 150 months of rehabilitative detention in federal prison, to be followed by three years of supervised release. On that same day, Smith noticed a timely appeal of his sentence.

A sentencing court's factual findings, made upon a preponderance of the evidence, are reviewed for clear error, which exists when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Saucedo,* 226 F.3d 782, 787 n. 10 (6th Cir.2000), *cert. denied,* 531 U.S. 1102, 121 S.Ct. 838, 148 L.Ed.2d 718 (2001). By contrast, the initial forum's legal conclusions are examined *de novo,* although its construction of the sentencing guidelines is entitled to "due deference." 18 U.S.C. § 3742(e); *United States v. Dunlap,* 209 F.3d 472, 476–77 n. 8 (6th Cir.2000). Generally, the Official Commentary to the guidelines should be accorded the same authority as the guidelines themselves. *Dunlap,* 209 F.3d at 477 n. 9.

The sentencing guidelines' definition of a "career offender" comprises three elements:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a

---

**3.** On June 19, 1992, following a judicial hearing, the suspension of Smith's ten-year prison term for his above-referenced January 23, 1990 violent sexual attack was revoked, whereupon he was remanded to state custody. Ultimately, the Alabama trial court directed that Smith's October 29, 1990 and June 21, 1995 penalties would run concurrently. Although the PSR did not reflect the date of Smith's release on probation from the Ala-

bama correctional system, it disclosed that Smith "was conditionally released from supervised probation on December 9, 1997, after having completed over half of his probation" but that his "probation officially expires June 17, 2000." Accordingly, Smith was on probation for the commission of sex-related felonies, including the victimization of a secondary school pupil, when he committed the instant offenses against K.H. and V.N..

felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense[.]

U.S.S.G. § 4B1.1. That section further posits that "[a] career offender's criminal history category in every case shall be Category VI." *Id.*

No dispute exists that Smith was over age 18 when he committed the subject offense conduct. Thus, Smith fulfilled the first requisite of "career offender" status.

■ Regarding the second requirement, the trial court found that *two* of Smith's counts of conviction were felonious crimes of violence:[4] (1) count one, use of a computer to entice a minor (V .N.) to travel interstate to engage in unlawful sex, which carried a potential penalty of ten years in prison (18 U.S.C. § 2422(a)); and (2) count three, interstate transportation of a minor (V.N.) to commit illegal sex acts, which was maximally punishable by fifteen years in federal custody (18 U.S.C. § 2423(a)). The Sixth Circuit has instructed that any felony involving the sexual exploitation of a juvenile inherently poses a serious poten-

tial risk of physical injury to the victim and hence constitutes a categorical "crime of violence." *United States v. Campbell,* 256 F.3d 381, 395–97 (6th Cir.2001); *United States v. Champion,* 248 F.3d 502, 505–06 (6th Cir.2001). Therefore, the district judge's ruling that Smith had committed at least one subject felonious violent crime of conviction was not contaminated by any error of law or fact.

Addressing the final branch of the three-pronged "career offender" query, the trial court resolved that at least two of Smith's three prior Alabama convictions, evolved above, were anchored in violent felony offenses. The conduct averred in the April 1990 Alabama indictment against Smith included "deviate sexual intercourse with [an adult victim], a female, by forcible compulsion,[5] in violation of § 13A–6–63 of the Code of Alabama, 1975, as last amended," and further charged forcible anal and oral penetration of the same victim in affront to the same Alabama statute. The Alabama jury convicted Smith of attempted sexual misconduct and first degree attempted sodomy. Alabama's sodomy statute provided:

---

**4.** The guidelines' definition of "crime of violence" states:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that -
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary or a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2. The Application Notes to section 4B1.2 clarify that a "crime of violence" may include an attempt, conspiracy, or the aiding and abetting of a crime defined as a "crime of violence" by the guidelines. U.S.S.G. § 4B1.2, comment. (n. 1). Further-

more, a "crime of violence" may be *either* one which includes an essential element of physical force, *or* one in which "the conduct set forth (*i.e.,* expressly charged) in the count of which the defendant was convicted ... by its nature, presented a serious potential risk of physical injury to another." *Id. See also* 18 U.S.C. § 3156(a)(4).

"[T]he term 'felony' means an offense punishable by a maximum term of imprisonment of more than one year[.]" 18 U.S.C. § 3156(a)(3).

**5.** "Forcible compulsion" was defined in the Alabama Criminal Code as "[p]hysical force that overcomes earnest resistance or a threat, expressed or implied, that places a person in fear of immediate death or serious physical injury to himself or another person." Ala. Code § 13A–6–60.

(a) A person commits the crime of sodomy in the first degree if:

(1) He engages in deviate sexual intercourse with another person by forcible compulsion[.]

(b) Sodomy in the first degree is a Class A felony.

Ala.Code § 13A–6–63.

■ Accordingly, at minimum, Smith's January 23, 1990 Alabama conviction for attempted sodomy in the first degree constituted a felonious crime of violence, because it included, as an essential element, the use, attempted use, or threatened use of violence; and, alternatively, because the subject indictment had alleged conduct which posed a serious risk of physical injury to the victim. *See* note 4 above; *United States v. Arnold*, 58 F.3d 1117, 1124 (6th Cir.1995). Smith's June 1995 Alabama conviction for the second degree rape of a fourteen-year-old girl supplied the second requisite prior violent felony conviction[6] because, as illustrated above, any felony conviction involving the sexual exploitation of a minor victim categorically constitutes a "crime of violence." *See Campbell*, 256 F.3d at 395–97; *Champion*, 248 F.3d at 505–06.

Thus, because the three required elements of § 4B1.1 had been proved, the district court correctly applied the "career offender" guideline to the defendant.

The defendant's challenge to the district court's five-point augmentation of his offense level for distributing materials involving the sexual exploitation of a minor was likewise misconceived. At the time of Smith's May 2000 sentencing, the guidelines directed:

If the offense [related to materials involving the sexual exploitation of a minor] involved distribution, increase [the offense level] by the number of levels from the table in § 2F1.1 corresponding to the retail value of the material, *but in no event by less than 5 levels.*

U.S.S.G. § 2G2.2(b)(2) (Nov. 1, 1998) (italics added; boldface in original).

■ Contrary to Smith's argument, the absence of a monetary incentive motivating his electronic distribution of obscene photographs of K.H. did not insulate him from the § 2G2.2(b)(2) enhancement. *See United States v. Hibbler*, 159 F.3d 233, 237–38 (6th Cir.1998) (*citing United States v. Canada*, 110 F.3d 260, 263 (5th Cir. 1997)), *cert. denied*, 526 U.S. 1030, 119 S.Ct. 1278, 143 L.Ed.2d 372 (1999). Smith's alternate contention, that enhancing his offense level for "distributing" salacious images of a juvenile via the Internet constituted impermissible "double counting" because he had been separately punished for "transporting or shipping" sexually explicit images of the same girl in interstate commerce under count five of the indictment,[7] was also ill-formulated. "Distribution" of pornographic images of a minor is an activity materially distinct from the use of a computer to "transport or ship" sordid visual depictions of a minor—whereas § 2252(a)(1) punishes *the abuse of avenues of interstate commerce by transmitting prurient and offensive sexual images of children thereby,*

---

6. In Alabama, "[r]ape in the second degree is a Class B felony." Ala.Code § 13A–6–62(b).

7. Count five charged Smith with violating 18 U.S.C. § 2252(a)(1), which punishes:

[a]ny person who -
(1) knowingly transports or ships in interstate or foreign commerce by any means including by computer or mails, any visual depiction, if -
(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
(B) such visual depiction is of such conduct[.]

§ 2G2.2(b)(2) penalizes *the publication or broadcast to others* of such degenerate and exploitative likenesses. *See United States v. Muhammad,* 948 F.2d 1449, 1458 (6th Cir.1991).

At any rate, the "double counting" prohibition does *not* preclude the imposition of a guidelines enhancement for the same or similar conduct independently punished by statute, "where it appears that Congress or the Sentencing Commission intended to attach multiple penalties to the same conduct." *United States v. Farrow,* 198 F.3d 179, 194 (6th Cir.1999) (citations omitted). The Sentencing Commission, in Appendix A to the guidelines, specified that the enhancements dictated by U.S.S.G. § 2G2.2 would apply to persons, like Smith, convicted of impinging 18 U.S.C. § 2252. Accordingly, the defendant's "double counting" argument was inapposite.

Next, the defendant has assailed the trial court's assessment of five offense levels for engaging "in a pattern of activity involving the sexual abuse or exploitation of a minor[.]" U.S.S.G. § 2G2.2(b)(4). The Official Commentary instructs:

> For purposes of this guideline -
>
> . . . .
>
> "Pattern of activity involving the sexual abuse or exploitation of a minor" means any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same or different victims; or (C) resulted in a conviction for such conduct.
>
> "Sexual abuse or exploitation" means conduct constituting criminal sexual abuse of a minor, sexual exploitation of a minor, abusive sexual contact of a minor, any similar offense under state law, or

an attempt or conspiracy to commit any of the above offenses. "Sexual abuse or exploitation" does not include trafficking in material relating to the sexual abuse or exploitation of a minor.

U.S.S.G. § 2G2.2, comment. (n. 1).

> Prior convictions taken into account under subsection (b)(4) are also counted for purposes of determining criminal history points pursuant to Chapter Four, Part A (Criminal History).

*Id.* (n. 2).

■ Smith's sex crimes, developed above, against K.H., V.N., and a hapless fourteen-year-old child in Alabama, when aggregated, constituted "two or more instances of sexual abuse or sexual exploitation" of minors by the defendant. Smith's erroneous contention, supported solely by nonbinding, unpersuasive, and off-point out-of-circuit precedents, that only transgressions of 18 U.S.C. §§ 2241–45, which illegalize various forms of sexual abuse committed within the federal special maritime or territorial jurisdiction, or § 2251, which outlaws certain acts related to the sexual exploitation of children,[8] should exclusively be recognized under § 2G2.2(b)(4), contradicted the broad inclusive language of that guideline's above-quoted Application Note 1, and thus is rejected.

Finally, the defendant has postulated that the sentencing judge prejudicially erred by allegedly neglecting to articulate, on the record, her reasons for sentencing him at the highest extreme, rather than at a lesser point, on the applicable 120–to–150–month guidelines range. *See* § 18 U.S.C. § 3553(c); *United States v. Jackson,* 181 F.3d 740, 744 (6th Cir.1999). However, because Smith failed to object to the trial court's averred default of that statutory obligation, he has forfeited that

---

**8.** Smith has sustained no conviction under   any of those federal statutes.

challenge; it is therefore non-cognizable on review, unless the lower court's charged omission constituted prejudicial "plain error." *See* Fed.R.Crim.P. 52(b); *United States v. Olano,* 507 U.S. 725, 733–37, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. Kingsley,* 241 F.3d 828, 835–36 (6th Cir.2001), *petition for cert. filed,* No. 00–10459 (June 5, 2001).

In the case *sub judice,* the sentencing bench did not commit the charged error. The sentencing transcript reflected multiple rationales for the district judge's election to impose the maximum custodial term allowed under the guidelines, including Smith's efforts to traumatize his youthful victim by distributing private intimate photographs of her, and embarrassing personal information and false rumors about her, in a vengeful bid to tarnish her reputation among her classmates and relatives, as well as by stalking and harassing her; his repeated abusive sexual exploits with, and victimization of, at least three juvenile females, including the violent ravishment of a fourteen-year-old student; his age (early 40s) at the time of his crimes of conviction; the defendant's long-standing pattern and practice of unconscionable manipulation of naive adolescents by means including threatened injuries and actual physical and emotional assaults; and the social interest in quarantining immoral predatory pedophiles like Smith from vulnerable and gullible children for the maximum duration authorized by the law. Any arguable inadequacy in the district court's articulation of its reasons for imposing the highest possible guidelines sentence would be, at worst, harmless error, given that "the supporting reasons are evident on the overall record[.]" *Kingsley,* 241 F.3d at 836 (emphasis in original; citations omitted).

This reviewing court has carefully considered all arguments mounted by the appellant, and concludes that each was misconceived. Accordingly, the defendant's judgment of conviction and sentence is AFFIRMED.