The STATE of Ohio, Appellee,

v.

FREEMAN, Appellant.

[Cite as *State v. Freeman*, 155 Ohio App.3d 492, 2003-Ohio-6730.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 02–JE–42.

Decided Dec. 12, 2003.

GENE DONOFRIO, Judge.

{¶ 1} Defendant-appellant, Oliver N. Freeman, appeals from Jefferson County Common Pleas Court judgments convicting him of sexual battery and sentencing him to three years in prison, denying his motion to dismiss, denying his motion for expert assistance, and denying his motion to amend his plea.

{¶ 2} On June 5, 2002, a Jefferson County Grand Jury indicted appellant on one count of sexual battery, a third-degree felony, for violating R.C. 2907.03(A)(5). R.C. 2907.03(A)(5) provides, "[N]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender is the other person's natural or adoptive parent * * *." This charge arose from a complaint filed by appellant's daughter, Sheena Freeman, with the Steubenville Police Department. At the time, Sheena was 20 years old.

{¶ 3} Appellant filed a motion for permission to hire an expert in the area of incest and its long-term effects at the court's expense because he is indigent. Appellant asserted in the motion that his parents were first cousins and incest and sexual abuse have abounded in his family. Thus, he claimed that he needed an evaluation by an incest expert to determine whether he was capable of understanding the nature of the charges against him. After a hearing, the trial court denied this motion.

{¶ 4} Appellant next filed a motion to dismiss the indictment against him arguing that R.C. 2907.03(A)(5), as applied to him, is an unconstitutional violation of his right to privacy because it unlawfully prohibits the sexual activity of consenting adults in their own home. He then filed a motion seeking permission to amend his plea to include not guilty by reason of insanity. After a hearing on the motions, the trial court overruled them both.

{¶ 5} Pursuant to a plea agreement, on September 25, 2002, appellant entered a plea of no contest to the charge of sexual battery. In return for appellant's plea, plaintiff-appellee, the state of Ohio, entered a nolle prosequi in another case pending against appellant. On October 9, 2002, the trial court sentenced appel-

lant to three years' incarceration. Additionally, it determined appellant to be a habitual sex offender. Appellant filed his timely notice of appeal the same day.

{¶ 6} Appellant raises four assignments of error, the first of which states:

{¶ 7} "The trial court erred when it overruled defendant/appellant's motion to dismiss the charge of sexual battery (in violation of R.C. § 2907.03(A)(5)) on the ground that section 2907.03(A)(5), as applied to defendant/appellant, violated his fundamental right of privacy.

{¶ 8} "Section 2907.03(A)(5) crosses the line between constitutionally permissible regulation designed to protect the young and vulnerable and the constitutionally prohibited violation of an individual's right of privacy when it is used to prosecute an individual for an act of adult consensual sex in that individual's private home."

{¶ 9} Appellant argues that R.C. 2907.03(A)(5), as applied to him, is unconstitutional. He alleges the statute violates his right to privacy. Appellant contends the statute is meant to protect those who are vulnerable to the sexual advances of people with power over them; but, in his case, his sexual partner was a consenting 20–year–old adult, who just happened to be his daughter. Appellant argues that the state cannot prove any compelling government interest to justify infringing on his fundamental right of privacy. Appellant analogizes his case to other cases throughout history where what was once criminal behavior is now constitutionally protected by our right to privacy. He cites *Roe v. Wade* (1973), 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (right to have an abortion); *Eisenstadt v. Baird* (1972), 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (right to use contraceptives); *Loving v. Virginia* (1967), 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (right to interracial marriage); *Griswold v. Connecticut* (1965), 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (right of married persons to use contraceptives).

{¶ 10} In *State v. Dario* (1995), 106 Ohio App.3d 232, 665 N.E.2d 759, the First Appellate District set out the standard to apply when determining whether a statute is unconstitutional as applied. The court stated:

{¶ 11} "When a statute is challenged on the ground that it is unconstitutional as applied, the burden is on the attacking party to present clear and convincing evidence of a presently existing set of facts which makes the statute void and unconstitutional when applied thereto. To decide whether the statute is unconstitutional as applied, we must determine whether appellant 'had a constitutionally protected right to engage in the type of activity he allegedly committed.' If appellant did not have a constitutionally protected right to engage in that activity then his argument that the statute is unconstitutional as applied must fail." (Internal citations omitted.) Id. at 240, 665 N.E.2d 759.

{¶ 12} At oral argument, appellant compared this case to the recent United States Supreme Court decision of *Lawrence v. Texas* (2003), — U.S. —, 123 S.Ct. 2472, 156 L.Ed.2d 508. In *Lawrence,* two men were convicted of violating a Texas statute criminalizing sodomy with a member of the same sex. Police officers were dispatched to a private home in response to a weapons disturbance. The officers entered Lawrence's apartment where they found Lawrence and another man engaging in a sexual act. The two men were consenting adults.

{¶ 13} The Court of Appeals for the Texas Fourteenth District denied the petitioners' constitutional arguments, relying on *Bowers v. Hardwick* (1986), 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140. In *Bowers,* the Supreme Court upheld a Georgia statute that criminalized sodomy regardless of whether the participants were members of the same sex. In reversing *Bowers,* the Supreme Court in *Lawrence* held that the Texas statute violated the petitioners' vital interests in liberty and privacy protected by the Due Process Clause.

{¶ 14} The court found that the Texas statute furthered no legitimate state interest that could justify its intrusion into the personal and private life of the individual. Id., — U.S. —, 123 S.Ct. at 2484, 156 L.Ed.2d 508. The court explained that the longstanding criminal prohibition of homosexual sodomy upon which *Bowers* placed considerable reliance is unfounded. Id., — U.S. —, 123 S.Ct. at 2478, 156 L.Ed.2d 508. It cautioned that the state and the courts should not define the meaning of a relationship or set boundaries to it, absent injury to a person or abuse of an institution the law protects. Id., quoting Justice Stevens's dissent in *Bowers,* the court stated that the fact that a governing majority has traditionally viewed a particular practice as immoral is not a sufficient reason for upholding a law prohibiting the practice. Id., — U.S. —, 123 S.Ct. at 2483, 156 L.Ed.2d 508. And the protections of individual decisions by married persons concerning the intimacies of their physical relationship even when they do not intend to produce offspring, which are protected by the Due Process Clause, extend to intimate choices made by nonmarried people as well. Id. The court noted that the continuance of a law such as the Texas statute demeaned the lives of homosexuals. Id., — U.S. —, 123 S.Ct. at 2482, 156 L.Ed.2d 508. The court went on to explain that the case "involve[d] two adults who, with full and mutual consent from each other, engaged in sexual practices common to a homosexual lifestyle." Id., — U.S. —, 123 S.Ct. at 2484, 156 L.Ed.2d 508. It concluded that they were entitled to engage in such conduct without intervention of the government. Id.

{¶ 15} This case is distinguishable from *Lawrence.* First, in *Lawrence,* the petitioners challenged the constitutionality of the Texas statute. Here appellant does not challenge the constitutionality of R.C. 2907.03(A)(5), he only asserts that it is unconstitutional as applied to him.

{¶ 16} Second, justifications for striking down the Texas statute do not apply here. For instance, the court advised that states and courts should generally not attempt to set up boundaries to a relationship absent injury to a person. In the case of incest, as opposed to a consensual homosexual relationship, there is injury to persons. Appellant is an example of this. Appellant claims that the incest committed by his parents and relatives affected him so severely that he needed to hire an expert on incest and its long-term effects and should have pled not guilty by reason of insanity because he could not understand the wrongfulness of his actions. Additionally, the state has a legitimate interest in preventing incest: protecting the family unit. The same cannot be said for homosexual relationships.

{¶ 17} Third, in *Lawrence*, it was undisputed that both participants mutually consented to the sexual act. In this case, the facts are not clear. Sheena filed a police report stating that appellant forced her to have sex with him. Appellant states that the sex was consensual. Appellant pled no contest to the charge of incest, so the case never went to trial. Accordingly, we have no factual basis on which to evaluate appellant's claim that the sex was consensual. See *Columbus v. Baba*, 10th Dist. No. 01AP–341, 2002-Ohio-831, 2002 WL 307681.

{¶ 18} In the present case, appellant did not have a constitutionally protected right to engage in incest with his daughter. Neither the United States Constitution nor the Ohio Constitution guarantees appellant a fundamental right to engage in private acts of consensual sexual intercourse with his daughter. *State v. Benson* (1992), 81 Ohio App.3d 697, 612 N.E.2d 337. Appellant has failed to present any evidence, let alone clear and convincing evidence, of a presently existing set of facts that makes R.C. 2907.03(A)(5) void and unconstitutional when applied to him. Thus, appellant's first assignment of error is without merit.

{¶ 19} Appellant's second assignment of error states:

{¶ 20} "The trial court erred when it overruled defendant/appellant's motion for expert assistance in the area of incest and its long-term effects despite evidence that the defendant/appellant was the product of an incestuous marriage, the victim of sexual abuse at the hands of numerous family members during his childhood and had no history of inappropriate sexual conduct other than that which occurred consensually between defendant/appellant and his adult biological daughter.

{¶ 21} "The Due Process Clause of the United States Constitution and the Ohio Constitution requests that a criminal defendant be provided with expert assistance, in addition to traditional expert psychiatric assistance, when it is necessary to present an adequate defense and, in defendant/appellant's case, such assistance was crucial to the presentation of defendant/appellant's mental state at the time of the offense."

{¶ 22} Appellant argues that the trial court erred in overruling his motion for expert assistance in the area of incest and its long-term effects. Appellant contends that under the factors set out in *Ake v. Oklahoma* (1985), 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53, and adopted by *State v. Mason* (1998), 82 Ohio St.3d 144, 694 N.E.2d 932, the court should not have denied his motion. First, he claims that he had a profound interest in the accuracy of his trial. Second, he alleges that appellee would not have been burdened, other than monetarily, had the court allowed him to hire an expert. Finally, he argues that the probable value of an expert was immeasurable to him. Appellant claims that an expert could have revealed that he did not possess the culpable mental state of "recklessness" for the commission of the offense because he did not perversely disregard a known risk.

{¶ 23} In *Mason,* the Ohio Supreme Court held that due process requires the trial court to provide state funds to an indigent criminal defendant in order to obtain expert assistance only where the court finds, in exercising sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense and (2) that denial of the requested expert assistance would result in an unfair trial. Id. at 150, 694 N.E.2d 932. In so holding, the court noted:

{¶ 24} "Due process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution, does not require the government to provide expert assistance to an indigent defendant in the absence of a particularized showing of need. Nor does it require the government to provide expert assistance to an indigent criminal defendant upon mere demand of the defendant." Id.

{¶ 25} The court further noted that the defendant had to demonstrate a reasonable probability that an expert would aid in his defense and that denial of expert assistance would result in an unfair trial. Id., citing *State v. Broom* (1988), 40 Ohio St.3d 277, 283, 533 N.E.2d 682; *Little v. Armontrout* (C.A.8, 1987), 835 F.2d 1240, 1244. The court adopted the factors to consider in determining whether to provide a defendant with an expert at the state's expense set out by the United States Supreme Court in *Ake,* supra. The factors are as follows: "(1) the effect on the defendant's private interest in the accuracy of the trial if the requested service is not provided, (2) the burden on the government's interest if the service is provided, and (3) the probable value of the additional service and the risk of error in the proceeding if the assistance is not provided." *Mason,* 82 Ohio St.3d at 149, 694 N.E.2d 932, citing *Ake,* 470 U.S. at 78–79, 105 S.Ct. 1087, 84 L.Ed.2d 53. The court further noted that pursuant to factor three, due process does not require the court to provide expert assistance relevant to an issue that is not likely to be significant at trial. *Mason,* 82 Ohio St.3d at 149, 694

N.E.2d 932. It proceeded to comment that due process does not require that an indigent defendant be provided all the assistance a wealthier defendant might buy, but that the defendant is entitled only to the basic and integral tools necessary to ensure a fair trial. Id.

{¶ 26} Applying the *Ake* factors to the present case, we conclude that the trial court did not err in denying appellant's motion for an expert at the state's expense. First, appellant has not demonstrated how the accuracy of his trial was compromised for lack of an expert. Whether or not appellant's parents are first cousins or whether he was sexually abused as a child has no bearing on whether appellee could prove beyond a reasonable doubt that appellant violated R.C. 2907.03(A)(5). Second, the burden on the state's interest is not merely the expense of paying for appellant's expert. If appellant retained an expert, appellee would then have to expend the time and finances to hire its own rebuttal expert. The hiring and questioning of such experts could consume a great deal of time and delay a trial. Third, the probable value of an incest expert is questionable at best. Even if an expert opined that appellant did not know that incest was wrong due to his familial situation, appellant had learned that incest was wrong from his prior arrest, conviction, and prison sentence for committing incest with his daughter.

{¶ 27} Thus, it cannot be said that the trial court abused its discretion in denying appellant's request for an expert. Consequently, appellant's second assignment of error is without merit.

{¶ 28} Appellant's third assignment of error states:

{¶ 29} "The trial court erred when it refused to permit the defendant/appellant to amend his plea of 'not guilty' to 'not guilty' and 'not guilty by reason of insanity' once it was presented with sworn affidavits demonstrating defendant/appellant's history of profound sexual abuse and the incestuous history of his parents.

{¶ 30} "Criminal Rule 11 authorizes the entry of such a plea at any time prior to trial, upon a showing of good cause, and the trial court wrongfully ignored the ample good cause put forth by the defendant/appellant when it overruled defendant/appellant's motion to amend plea despite sworn affidavits and testimony proving that the profound sexual abuse suffered by the defendant/appellant and the incestuous history of his parents raised a substantial possibility that defendant/appellant did not know the wrongfulness of his act."

{¶ 31} Appellant alleges that the court abused its discretion in denying his motion to amend his plea to include not guilty by reason of insanity. He states that the court appointed his counsel immediately before his arraignment. He argues that his counsel was not able to interview him and his family members

until later in order to discover the incest perpetrated on him and its effects. Appellant points out that he submitted his and his sister's affidavits, which revealed a substantial possibility that as a result of the sexual abuse that he had suffered as a child, coupled with the fact that he is a product of an incestuous marriage of first cousins, he did not know the wrongfulness of his conduct.

{¶ 32} R.C. 2943.03 provides that a defendant who does not plead not guilty by reason of insanity is conclusively presumed to have been sane at the time of the commission of the offense charged. It goes on to state that the court may, for good cause shown, allow a change of plea any time before trial begins. R.C. 2943.03. Likewise, Crim.R. 11(H) provides that a defendant must plead the defense of not guilty by reason of insanity at the time of arraignment, "except that the court for good cause shown shall permit such a plea to be entered at any time before trial." Thus, we must determine whether appellant demonstrated good cause to amend his plea to add not guilty by reason of insanity.

{¶ 33} The court questioned appellant at the motion hearing regarding whether he knew what he was doing when he committed the offense. The following colloquy is relevant:

{¶ 34} "THE COURT: Tell me something, Mr. Freeman, you've been to prison for having sex with your daughter.

{¶ 35} "A   Yes, sir.

{¶ 36} "THE COURT: Did you know it was wrong?

{¶ 37} "A   At the time when I had it, no sir.

{¶ 38} "THE COURT: Well, then after you had it and you got arrested and you got prosecuted out and you worked out an agreement and you went to prison.

{¶ 39} "A   Yes sir.

{¶ 40} "THE COURT: Did you know it was wrong then?

{¶ 41} "A   Yes, sir.

{¶ 42} "THE COURT: Now you get out of prison.

{¶ 43} "A   Sir?

{¶ 44} "THE COURT: You then got out of prison.

{¶ 45} "A   Yes sir.

{¶ 46} "THE COURT: Finished serving your sentence. You came home.

{¶ 47} "A   Yes, sir.

{¶ 48} "THE COURT: Now the same daughter wants to have sex with you.

{¶ 49} "A   Yes, sir.

{¶ 50} "THE COURT: Didn't you know it was wrong?

{¶ 51} "A   Yes, sir.

{¶ 52} "THE COURT: Or were you affected by the alcohol and drugs?

{¶ 53} "A   I was affected by the alcohol and drugs but in a way I still felt that I knew it was wrong."

{¶ 54} R.C. 2901.01(A)(14) provides that a person is not guilty by reason of insanity if the person proves that "at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts." Appellant's conversation with the court demonstrated that he knew, at the time of his offense, that having sex with his daughter was wrong. This was due, at least in part, to having previously been convicted of sexual battery for the same act and serving a prison term for that conviction. There is no question that appellant knew the wrongfulness of his actions at the time of committing the offense. Therefore, appellant did not demonstrate good cause to change his plea to include not guilty by reason of insanity. Accordingly, appellant's third assignment of error is without merit.

{¶ 55} Appellant's fourth assignment of error states:

{¶ 56} "The trial court abused its discretion when it sentenced defendant/appellant to a term of three years in a state penitentiary after a plea of no contest despite the alleged victim's failure to appear at the sentencing hearing and extensive testimony regarding the non-violent, non-dangerous character of defendant/appellant.

{¶ 57} "The correct application of R.C. 2929.11, 2929.12 and 2929.13 by the trial judge would have led to a lesser term of imprisonment or the imposition of appropriate community control sanctions."

{¶ 58} Appellant argues that the trial court abused its discretion in sentencing him to three years in prison instead of community control. He contends that the factors in R.C. 2929.12 demonstrate that his conduct was less serious than conduct normally constituting sexual battery, and he is not likely to commit future crimes. Appellant points to such factors as Sheena's alleged consent and seduction, his alleged provocation, his alleged incestuous family history, the fact that Sheena was an adult, the fact that he has asked for help with his drug/alcohol problem, his supposed remorse, and the fact that Sheena failed to appear at the sentencing hearing to "defend the statements that she made to the Steubenville Police Department."

{¶ 59} A court of appeals no longer applies an abuse-of-discretion standard when reviewing a felony sentence. *State v. Cloud* (Sept. 26, 2001), 7th Dist. No.

98–CO–51, 2001 WL 1155855. Our standard of review is governed by R.C. 2953.08(G), which provides:

{¶ 60} "(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

{¶ 61} "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

{¶ 62} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (E)(4) of section 2929.14, or division (H) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

{¶ 63} "(b) That the sentence is otherwise contrary to law."

{¶ 64} Appellant was convicted of a third-degree felony. The potential prison terms for a third-degree felony are one, two, three, four, or five years. R.C. 2929.14(A)(3). The trial court sentenced appellant to a three-year prison term. Appellant does not contend that the trial court failed to make the necessary findings on the record to sentence him to a three-year prison term. Thus, we need not discuss the required findings. Instead, we will focus on the R.C. 2929.12(B)(C)(D) and (E) factors, which appellant contends demonstrate that his sentence is too harsh.

{¶ 65} R.C. 2929.11 sets forth the overriding purposes of felony sentencing to guide the sentencing court. "The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." R.C. 2929.11(A).

{¶ 66} R.C. 2929.12 lists various factors for the court to consider when imposing a sentence. R.C. 2929.12(B) provides factors that indicate that an offender's conduct is more serious than conduct normally constituting the offense, including:

{¶ 67} "(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.

{¶ 68} "(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.

{¶ 69} "(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.

{¶ 70} "(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.

{¶ 71} "(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.

{¶ 72} "(6) The offender's relationship with the victim facilitated the offense.

{¶ 73} "(7) The offender committed the offense for hire or as a part of an organized criminal activity.

{¶ 74} "(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.

{¶ 75} "(9) If the offense is a violation of section 2919.25 or a violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children." R.C. 2929.12(B).

{¶ 76} One of the R.C. 2929.12(B) factors applies to appellant. Appellant's relationship with the victim, his daughter, facilitated the offense. This factor indicates that his conduct was more serious in nature.

{¶ 77} R.C. 2929.12(C) provides factors that indicate that an offender's conduct is less serious than conduct normally constituting the offense. They are:

{¶ 78} "(1) The victim induced or facilitated the offense.

{¶ 79} "(2) In committing the offense, the offender acted under strong provocation.

{¶ 80} "(3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.

{¶ 81} "(4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense." R.C. 2929.12(C).

{¶ 82} Appellant argues that the victim, Sheena, came on to him and seduced him, thus facilitating the offense. However, in Sheena's statement to the police she stated that appellant sexually assaulted her by forcing her to submit to sex with him without her consent. Since this case never went to trial, we cannot be

sure of the facts surrounding the offense. Accordingly, we cannot say appellant's conduct was less serious than that normally constituting sexual battery.

{¶ 83} R.C. 2929.12(D) lists factors that indicate that an offender is likely to commit future crimes. The factors are:

{¶ 84} "(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing, * * * or under post-release control pursuant to section 2967.28 or any other provision of the Revised Code for an earlier offense or had been unfavorably terminated from post-release control for a prior offense * * *.

{¶ 85} "(2) The offender previously was adjudicated a delinquent child * * *, or the offender has a history of criminal convictions.

{¶ 86} "(3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent * * *, or the offender has not responded favorably to sanctions previously imposed for criminal convictions.

{¶ 87} "(4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.

{¶ 88} "(5) The offender shows no genuine remorse for the offense." R.C. 2929.12(D).

{¶ 89} At least three of these factors weigh heavily against appellant. At the time of the offense, appellant was under postrelease control. Importantly, appellant already had a conviction for committing the same offense against the same victim, which demonstrates that he had not been satisfactorily rehabilitated. Appellant admitted he has a drug and alcohol problem and asked the court for help. But he had been seeing a chemical dependency counselor, who testified at his sentencing. The counselor stated that he was not sure that appellant was ready to make a commitment to recover from his addiction. Finally, appellant did not show any remorse for his offense. At his sentencing hearing, appellant stated that he felt bad about what he did to Sheena. But in the next breath, he stated he believed Sheena was more to blame than he was for the offense. Hence, these factors suggest that appellant is likely to commit future crimes.

{¶ 90} R.C. 2929.12(E) enumerates factors that indicate that an offender is not likely to commit future crimes, including:

{¶ 91} "(1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.

{¶ 92} "(2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.

{¶ 93} "(3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.

{¶ 94} "(4) The offense was committed under circumstances not likely to recur.

{¶ 95} "(5) The offender shows genuine remorse for the offense."

{¶ 96} Like the R.C. 2929.12(D) factors, the R.C. 2929.12(E) factors indicate that appellant is likely to commit future crimes. Other than the fact that appellant had not been adjudicated a delinquent child, all of the factors apply to him. Appellant was still on postrelease control from his last sexual battery conviction. Obviously, the offense was likely to recur because this was appellant's second conviction for the same crime with the same victim, which demonstrates that he learned nothing from his previous conviction and sentence. Furthermore, as stated above, while appellant told the court that he felt bad about what he had done, he blamed Sheena for his own criminal behavior. Thus, the factors demonstrate that appellant has a high chance of recidivism.

{¶ 97} Based on the overriding purposes and principles of sentencing and the applicable sentencing factors, appellant's sentence is not contrary to law. Accordingly, his fourth assignment of error is without merit.

{¶ 98} For the reasons stated above, the trial court's decision is hereby affirmed.

Judgment affirmed.

WAITE, P.J., and VUKOVICH, J., concur.