RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0301p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 04-3338

WESLEY HARGROVE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 03-00066—Sandra S. Beckwith, Chief District Judge.

Argued: April 27, 2005

Decided and Filed: July 19, 2005

Before: KEITH, CLAY, and FARRIS,[*] Circuit Judges.

_____

**COUNSEL**

**ARGUED:** W. Kelly Johnson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cincinnati, Ohio, for Appellant. Timothy D. Oakley, UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:** W. Kelly Johnson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cincinnati, Ohio, for Appellant. Timothy D. Oakley, UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee.

_____

**OPINION**

_____

CLAY, Circuit Judge. Wesley Hargrove was convicted by a jury of being a felon in possession of a firearm, 18 U.S.C. §922(g)(1), and sentenced as an armed career criminal for having been convicted of three violent felonies in the past. *Id.* § 924(e)(1). He appeals his conviction on the grounds that the district court improperly denied his request for a jury instruction on the defense of necessity and that remarks made by the government in its closing argument constitute reversible misconduct. He appeals his sentence on the grounds that his prior felonies were not violent within the meaning of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), and that the Sentencing Guidelines are now advisory under *United States v. Booker*, 125 S. Ct. 738 (2005). We affirm Hargrove's conviction but vacate his sentence and remand for re-sentencing because we

---

[*] The Honorable Jerome Farris, Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

conclude that his prior felonies, three Ohio sexual battery convictions, Ohio Rev. Code § 2907.03(A)(5) (1994), were not violent felonies under the ACCA.

## I.  BACKGROUND

A jury in the Northern District of Ohio convicted Wesley Hargrove of possessing a firearm as a thrice-convicted violent felon.  18 U.S.C. §§ 922(g)(1), 924(e)(1).  The prior felonies were three counts of sexual battery in Ohio, OHIO REV. CODE § 2907.03(A)(5), for which Hargrove was convicted in 1981.  Before trial, the district judge determined that these prior felonies were violent for purposes of § 924(e), the ACCA.  The judge accordingly denied Hargrove's motion to dismiss the ACCA count of the indictment.  At sentencing, the district judge again rejected Hargrove's contention that the ACCA did not apply.  Hargrove challenges his conviction and 188-month sentence on various grounds.

On February 14, 2003, the Cincinnati police arrested Hargrove after stopping him for a traffic violation and discovering during the course of the stop an outstanding warrant for his arrest. The police searched Hargrove's car and uncovered a Davis Industries, Model-0-22, two shot .22 caliber derringer pistol.  At trial, Hargrove testified that his cousin, Art Swint, offered him the gun for protection after Hargrove was robbed at gunpoint in November 2001.  Swint testified that he gave the gun to Hargrove pursuant to his deceased father's wishes.  According to Swint, his father instructed him to give the gun to Hargrove.  Hargrove testified that the robber warned him not to return to the neighborhood.  After the robbery, Hargrove carried the gun whenever he heard that the unidentified robber would be "around."

Hargrove's defense consisted of his own testimony to the effect that the gun was necessary for his protection.  After the robbery, Hargrove testified, he was the victim of multiple threats and attempted and successful violent crimes.  In addition, he testified that a friend of his was tortured and murdered in Dayton.  According to Hargrove, people or a person he encountered on the streets of Cincinnati warned him and others that the same fate might befall them.  Hargrove testified that he viewed his friend's murder as being linked to the November 2001 robbery.  Finally, Hargrove testified to two events in the days and hours immediately prior to his arrest.  First, on February 12, 2003, two days before his arrest, he was again robbed.  Second, on the morning of his arrest on February 14, 2003, while Hargrove was on a building-inspection assignment in the Madisonville area of Cincinnati, a man approached and threatened to carry out a drive-by shooting against Hargrove's family if he did not leave Madisonville.  Hargrove reported that he fled.

Hargrove testified that the combination of the Madisonville threat and his other recent experiences prompted him to immediately retrieve the gun from his nephew, Ken Mitchell, to whom he had pledged it as collateral for a loan.  Hargrove testified to having a particularized fear for his safety in several Cincinnati neighborhoods, some of which he intended to visit for errands that day. According to Hargrove he was doing one such errand – going to the Cincinnati post office for his nephew – when the police arrested him and seized the gun.  Hargrove also testified repeatedly that self-defense was a tenet of his religion.

## II.  DISCUSSION

### A.       Jury Instruction on the Necessity Defense

Hargrove contends he was entitled to a jury instruction on the defense of necessity.  This Court "review[s] jury instructions as a whole to determine whether they fairly and adequately submitted the issues and applicable law to the jury." *United States v. Brown*, 367 F.3d 549, 555 (6th Cir. 2004) (citing *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991)).  "A refusal to give requested instructions is reversible error only if (1) the instructions are correct statements of the law; (2) the instructions are not substantially covered by other delivered charges; and the failure

to give the instruction impairs the defendant's theory of the case." *United States v. Newcomb*, 6 F.3d 1129, 1132 (6th Cir. 1993); *see also United States v. Sassak*, 881 F.2d 276 (6th Cir. 1989). Finally, a jury instruction is not warranted if "it lacks evidentiary support or is based upon mere suspicion or speculation." *United States v. James*, 819 F.2d 674, 675 (6th Cir. 1987) (citation omitted). Applying these standards, it is clear that Hargrove's claim is without merit; the district court properly denied his request for a necessity instruction.

Under case law in this circuit, a defendant in a prosecution for possession of a firearm as a felon may assert the defense of necessity or justification. *United States v. Singleton*, 902 F.2d 471 (6th Cir. 1990). However, the defense is appropriate only in "rare situations[,] . . . should be construed very narrowly[,] . . . [and must not go to the jury] if the evidence could not support a verdict based on it." *Id.* at 472-73 (citing in part *United States v.* Bailey, 444 U.S. 394, 398-99 (1980)). Instructions on the defense are proper if the defendant has produced evidence upon which a reasonable jury could conclude by a preponderance of the evidence that each of the following five circumstances exist:

> (1) defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
>
> (2) defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;
>
> (3) defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm;
>
> (4) a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm; [and]
>
> [(5)] [defendant] did not maintain possession any longer than absolutely necessary.

*Singleton*, 902 F.2d at 472-73 (citations and quotations omitted); *Newcomb*, 6 F.3d at 1134-35.

The district court denied Hargrove's request for a necessity instruction on the grounds that he failed to meet any of the five requirements. Specifically, the court found that the threat Hargrove claimed to be protecting himself against – the comments made to him by an unknown man in Madisonville – was not "present, imminent, and impending." The court further found that Hargrove was under no compulsion to go to the areas of Cincinnati where he claimed to be in danger. As a consequence, the district court concluded that no reasonable jury could view Hargrove's conduct as not reckless or negligent. As for the third requirement, the court concluded that Hargrove offered no evidence as to why he had no choice but to arm himself. The district court similarly found insufficient evidence with respect to the other two elements of the *Singleton* test.

The district court did not err. Hargrove failed to satisfy at least the first element of the *Singleton* test and consequently was not entitled to a jury instruction on the defense of necessity. It is undisputed that Hargrove was not armed on the morning of February 14, 2003, when, according to his testimony, a man approached and told him "he wasn't supposed to be" in the Madisonville neighborhood. According to Hargrove, the man said something to the effect of "Do you want a drive-by or your family to go down or something?" Upon hearing this, Hargrove immediately went to his car and drove away. Hargrove does not contend that the unidentified threatener followed him. Nor does Hargrove suggest that the man possessed a weapon of any kind. Under the case law, these circumstances fall short of constituting a "present, imminent, and impending [threat] of such a nature as to induce a well-grounded apprehension of death or serious bodily injury." *Singleton*, 902 F.2d at 472 (citation omitted).

In *Singleton*, the defendant testified that he procured a firearm during his escape from the clutches of a kidnapper who had threatened to kill him. 902 F.3d at 472. It was undisputed that the defendant was at the home of the alleged kidnapper when he procured the gun. *Id.* This Court appeared to view this evidence as sufficient to satisfy the first prong of what we now term the *Singleton* test. *See id.* at 472-73. However, the Court upheld the denial of a jury instruction because the defendant continued to possess the firearm after successfully escaping. *Id.* In any event, the alleged threat against Hargrove is of an entirely different character than the threat at issue in *Singleton*. There, the defendant faced a present and imminent threat of continued kidnaping and death. Hargrove's threatener was vague, unarmed, and, most critically, did not pursue Hargrove.

*United States v. Newcomb* is similarly distinguishable. In *Newcomb*, the defendant faced what this Court described as an imminent emergency situation. His girlfriend's son had stormed out of the house, shotgun in hand, bent on killing a specific person. The defendant gave chase only minutes later in order to stave off a possible murder. *Newcomb*, 6 F.3d at 1136.

In contrast to the defendants in *Singleton* and *Newcomb*, Hargrove supports his request for a necessity instruction only with speculation and conjecture – an insufficient basis upon which to mount a necessity defense. *United States v. James*, 819 F.2d 674, 675 (6th Cir. 1987); *United States v. O'Neal*, 1999 WL 777307 (6th Cir. Sept. 23, 1999) (unpublished) (upholding the denial of a necessity instruction where defendant failed to show the threat of harm was imminent, among other things); *United States v. Maxwell*, 254 F.3d 21, 27 (1st Cir. 2001) (the record must contain evidence of "a real emergency, a crisis involving immediate danger to oneself or to a third party"); *United States v. Bell*, 214 F.3d 1299, 1301-1302 (11th Cir. 2000) (defendant's averment of threats, even following one verified attack, was insufficient to suggest an imminent danger to him).

In sum, Hargrove has failed to present evidence upon which a reasonable jury could conclude that, at the moment he was arrested on the afternoon of February 14, 2003, he faced a threat that serious bodily harm or death was imminent and impending. Accordingly, the district court properly denied his request for a necessity instruction.[1]

## B.          Prosecutorial Misconduct during Closing Statement

Hargrove asserts the government committed prosecutorial misconduct in its closing argument by likening the gun in his possession to the gun used to assassinate President Lincoln. He objected to the government's statements when they were made and later moved for a mistrial. We review the denial of a motion for mistrial for abuse of discretion, *United States v. Yang*, 281 F.3d 534, 549 (6th Cir. 2002), and find none here.

Hargrove admitted being a felon in possession. At trial, he defended against the felon-in-possession charge by asserting that he possessed the derringer pistol for self-defense. Accordingly, Hargrove characterized the gun as being designed principally for defensive use and testified that he declined to get a "better gun" such as the .45 caliber handgun offered by his nephew. According to Hargrove's testimony on cross examination, the derringer was small, easy to carry, and not unwieldy. Hargrove explained that these qualities made the derringer an ideal defensive weapon. Hargrove admitted it would be easy to quickly draw the weapon on another person. In its closing

---

[1] It also appears Hargrove cannot satisfy the third *Singleton* requirement, i.e., that he had no reasonable alternative but to possess a firearm. This Court has observed that "[t]he defense of necessity is not applicable when one has a choice of several courses of action, unless defendants show they pursued their alternatives or such alternatives were foreclosed." *United States v. Milligan*, 17 F.3d 177, 181 (6th Cir. 1994) (citations omitted). Hargrove has not shown why retrieving the firearm was his only reasonable choice.

argument, the government sought to rebut Hargrove's representations that the derringer was only suitable for defensive use.  The prosecutor argued:

> [O]n February 14th of this year, when [Hargrove's] down there with his club . . . a faceless thug comes up who he didn't know.  This man didn't know him.  Comes up and says he's going to do a drive-by, even though we have no idea why that would happen.  He obviously didn't know who Mr. Hargrove was or knew where he lived.
>
> So Mr. Hargrove leaves, and instead of getting a .45 gun, which is a big scary gun, you can wave that bad boy around and people know you're packing and people leave you alone, he gets this one, which we've heard is a lousy defense gun, doesn't scare anybody, looks like a toy.  It is, though, an excellent killing weapon.  If you don't believe me, a derringer killed Abraham Lincoln.  Walked up and put it in the back of the head and pulled the trigger.

J.A. 213-14.

Hargrove objected to the prosecutor's reference to the Lincoln assassination on the grounds that the gun used there was a larger caliber weapon than the .22 caliber in Hargrove's possession.  The government argued that the point of the reference was to rebut the defense's suggestion that one would only use a derringer-brand gun in self-defense.  The district judge overruled the objection.  The government then concluded its argument as follows:

> Now, he did turn down the .45, but he did tell us something that I found just as scary.  That he wanted the derringer because it was small.  You've seen the size of my hand, I don't have a big hand, it's small and easily concealable.  But in his words, they're small, because he liked to get up close, before they know it's there.
>
> That's not a defensive weapon, ladies and gentlemen.  When you can sneak up on somebody with a gun in your hand and they don't know it, that serves no defensive purpose.  That's an offensive weapon.  Common sense, who was threatened on the 14th of February 2003, was it the police or was it him?  Who's the real threat?  The police, society, or Mr. Hargrove, a convicted felon with a gun?  It's all about accountability, ladies and gentlemen, it's all about accountability.

J.A. 214-15.

After the judge instructed the jury, during which she admonished the jurors not to consider the parties' closing arguments as evidence in the case, defense counsel moved for a mistrial on the grounds that the prosecutor's reference to the Lincoln assassination denied Hargrove a fair trial.  Counsel argued that the prosecutor likened the derringer in Hargrove's possession to the one used to assassinate Lincoln even though he knew that the latter was a .41 or .44 caliber gun while the former was only a .22 caliber gun.  Finding that the prosecutor had made the Lincoln assassination reference not for any improper purpose but rather to argue that a derringer could be an effective offensive weapon, the district judge denied the motion.

We conclude that the district court did not abuse its discretion. Even assuming the prosecutor's statement was improper, the evidence that Hargrove violated § 922(g) was overwhelming.  This Court's approach to claims of prosecutorial misconduct proceeds as follows.  "First, we determine whether a prosecutor's remarks were improper, and then we determine whether the impropriety amounts to reversible error." *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994).  There are two types of reversible error in this area:  improper remarks that are flagrant amount to *per se* reversible error; improper remarks that are not flagrant may amount to reversible error in certain circumstances.  This Court determines whether improper remarks were flagrant by

considering four factors: "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *Id*.; *see also United States v. Trujillo*, 376 F.3d 593, 613 (6th Cir. 2004); *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001). If a remark is held to be not flagrant, it may nevertheless warrant reversal in cases where (1) the proof against the defendant was not overwhelming, (2) opposing counsel objected to the conduct, and (3) the district court failed to give a curative instruction. *Carroll*, 26 F.3d at 1385; *Trujillo*, 376 F.3d at 613; *see also United States v. Galloway*, 316 F.3d 624, 633 (6th Cir. 2003).

In this case, the alleged misconduct consists of one statement made by the prosecutor in closing argument, namely, his reference to the assassination of President Lincoln, in which the prosecutor alleges that a derringer pistol was used. This was by definition an isolated remark. Even assuming the remark was deliberately calculated to mislead the jury, it did not prejudice Hargrove because the evidence against him was overwhelming. Consequently, the prosecutor's remark, assuming it was improper, does not amount to reversible error.

There is no dispute regarding the facts relevant to the elements of the felon-in-possession offense. Hargrove stipulated to being a convicted felon found in possession of a firearm that affected and traveled in interstate commerce. *See* 18 U.S.C. § 922(g). The only issue at trial was whether Hargrove's possession of the derringer was "knowing" in the sense meant by § 922(g), i.e., intentional and voluntary, not by mistake or accident. *See United States v. Farrow*, 198 F.3d 179, 187 n.8 (6th Cir. 1999); *United States v. Bennett*, 975 F.2d 305, 308 (6th Cir. 1992). As discussed, Hargrove portrayed his possession of the weapon as an innocent necessity. It is the defendant's burden to prove that his possession of a firearm was justified by necessity. *United States v. Brown*, 367 F.3d 549, 555-56 (6th Cir. 2004); *United States v. Singleton*, 902 F.2d 471, 472 (6th Cir. 1990). This affirmative defense does not negate any element of the offense in question because "a felon in possession charge only requires proof of general, rather than specific, intent." *Brown*, 367 F.3d at 556 (citing *Bennett*, 975 F.3d at 308). As this Court recently observed: "Proving necessity does not necessarily undercut the element of 'knowing possession;' one can knowingly possess a firearm but still do so under circumstances of necessity that justify an otherwise illegal act." *Id*. However, notwithstanding the availability of the necessity or justification defense in a prosecution under 18 U.S.C. § 922(g), the defense was not available in this case because, as we have just discussed, Hargrove failed to meet the threshold requirements for presenting such a defense. Thus, the only question properly before the jury was whether Hargrove had knowingly possessed the derringer. On this score, the government need not prove that Hargrove's possession of the derringer was for some nefarious purpose, nor disprove Hargrove's assertions that he carried the weapon for self-defense. The government's burden under § 922(g) is to prove only that the possession of a firearm by a felon was knowing and voluntary, not by mistake or accident. The record contains not even a scintilla of evidence suggesting that the derringer came into Hargrove's possession by accident or mistake. Instead, as has been repeatedly pointed out, Hargrove *admitted* he possessed the gun intentionally. In sum, there was overwhelming evidence that Hargrove violated § 922(g). Accordingly, whether flagrant or not, the prosecutor's remark does not amount to reversible error.

## C.     The ACCA Enhancement

This Court reviews a district court's conclusion that a crime constitutes a violent felony under the ACCA or a crime of violence under the ACCA's parallel provision in the Guidelines *de novo*. *United States v. Martin*, 378 F.3d 578, 580 (6th Cir. 2004); *United States v. Cooper*, 302 F.3d 592, 594 (6th Cir. 2002). Critically, it is the government's burden to prove that a defendant qualifies for the mandatory 15-year ACCA enhancement, *United States v. Thomas*, 159 F.3d 296, 300 (7th Cir. 1998), and we conclude the government has not met its burden in this case.

The ACCA mandates a minimum sentence of fifteen years in prison for those convicted of possessing a firearm after three prior convictions for violent felonies.[2]  18 U.S.C. § 924(e).  Under the statute and a parallel provision of the Sentencing Guidelines, covered offenses include crimes that "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another," *id.* § (e)(2)(B)(i), or crimes that "involve[] conduct that presents a serious potential risk of physical injury to another."  *Id.* § (e)(2)(B) (ii); *see also* U.S.S.G. §§ 2K2.1(a)(4)(A), 4B1.2(a).  The government contends that Hargrove may be sentenced as an armed career criminal under the second of these definitions, § 924(e)(2)(B)(ii).  Hargrove concedes his convictions satisfy §924(e)(B)'s additional requirement that the prior offenses be punishable by a prison term exceeding one year.  *Id.*

We have explained that "[i]n determining whether a particular offense [is covered by the ACCA], this court follows a categorical approach 'limited to an examination of the fact of conviction and the statutory definition of the predicate offense.'  Under this approach, 'it is not only impermissible, but pointless, for the court to look through to the defendant's actual criminal conduct.'"  *United States v. Campbell*, 256 F.3d 381, 395-96 (6th Cir. 2001) (quoting *United States v. Arnold*, 58 F.3d 1117, 1121 (6th Cir. 1995)).  Accordingly, this Court has remained true to the Supreme Court's instruction in *Taylor v. United States*, that "[18 U.S.C.] § 924(e)(2)(B)(ii) . . . generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense."  495 U.S. 575, 602 (1990).  There is a narrow exception to this general rule: in cases where the prior offense is defined broadly enough for it to encompass some offenses that meet the ACCA's definition of a "violent felony" and some that do not, the district court may consider, in addition to the offense's statutory definition, the charging document and jury instructions.  *Id.*; *Shepard v. United States*, 125 S. Ct. 1254, 1258 (2005); *United States v. Seaton*, 45 F.3d 108, 111 (6th Cir. 1995); *see also United States v. Sawyers*, 409 F.3d 732, 742 (6th Cir. 2005) (discussing the analogous principle in the context of a prior conviction by guilty plea).  In this case, the government relied, without objection, on the indictment under which Hargrove was charged but has never referred to the jury instructions used in his state trial.  Consequently, we determine whether, by reference only to the statutory definition of the prior offense and to the indictment, Hargrove's sexual battery convictions constitute convictions for violent felonies under 18 U.S.C. § 924(e)(2)(B)(ii).

Hargrove's sexual battery convictions stemmed from sexual encounters with two of his stepdaughters in 1979.  The statute under which he was charged and convicted read as follows:

No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:

(1)  The offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution.

(2)  The offender knows that the other person's ability to appraise the nature of or control his or her own conduct is substantially impaired.

(3)  The offender knows that the other person submits because he or she is unaware that the act is being committed.

(4)  The offender knows that the other person submits because such person mistakenly identifies the offender as his or her own spouse.

---

[2] Or three prior convictions for serious drug offenses.  § 924(e).

*(5)  The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis.*

(6)  The other person is in custody of law or a patient in a hospital or other institution, and the offender has supervisory or disciplinary authority over such other person.

OHIO REV. CODE § 2907.03(A) (1994) (emphasis added).

Hargrove was charged under subsection (5), for having engaged in sexual conduct with his stepdaughters.  As is clear from the language above, the statute does not require proof of the victim's age, nor proof that consent was lacking.  The indictment, which is part of the record in this case, also makes no reference to the age of Hargrove's stepdaughters at the time of the charged conduct, nor to whether the conduct was coerced or consensual.  Applying the categorical approach just described, the district judge concluded that the offense defined in subsection (5) constitutes a violent felony under the ACCA.  Whether the district court was correct is a novel question.  This Court has held that sexual offenses involving victims who were minors amount to crimes of violence under the ACCA.  *United States v. Campbell*, 256 F.3d 381 (6th Cir. 2001); *United States v. Champion*, 248 F.3d 502 (6th Cir. 2001); *United States v. Arnold*, 58 F.3d 1117 (6th Cir. 1995).  This Court has also held that the Ohio crime of sexual battery by deception – defined in subsections (3) and (4) of § 2907.03(A) – constitutes a crime of violence under the ACCA.  *United States v. Mack*, 53 F.3d 126 (6th Cir. 1995).  In the cases involving minor victims, the victims' minority proved determinative. *Campbell*, 256 F.3d at 396; *Champion*, 248 F.3d at 505-506.  And in *Mack*, the result depended on the coercive nature of sexual battery by deception.  *Mack*, 53 F.3d at 128.[3]

Here, we confront an offense not obviously susceptible to the rationales that prevailed in those cases.  Section 2907.03(A)(5) criminalizes *all* sexual conduct between people and their natural, adopted, or step- parents.  The statute does not distinguish between consensual sex and forced sex, or between sex with a minor and sex with an adult.  Neither do Ohio prosecutors or Ohio courts, for the case law shows that people are successfully prosecuted under 2907.03(A)(5) for having consensual sex with their adult children or step-children.  *State v. Freeman*, 801 N.E.2d 906, 909-10 (Ohio Ct. App. 2003); *State v. Benson*, 612 N.E.2d 697, 700-701 (Ohio Ct. App. 1992); *State v. Osborne*, 1997 WL 817837 (Ohio Ct. App. Dec. 31, 1997) (unpublished opinion).[4]  Nevertheless, the district court concluded that a violation of 2907.03(A)(5) "involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B)(ii); U.S.S.G. §§ 2K2.1(a)(4)(A), 4B1.2(a).  In our view, the district court's conclusion cannot be squared with this

---

[3] Similarly, this Court recently held that the Illinois crime of aggravated criminal sexual abuse, which proscribes sexual conduct by actual force, sexual conduct with minors, and sexual conduct with other helpless victims such as the physically or mentally handicapped, constitutes a crime of violence under 18 U.S.C. § 16(b), and thus an aggravated felony under 8 U.S.C. § 1101(A)(43)(F).  *Patel v. Ashcroft*, 401 F.3d 400 (6th Cir. 2005).  The Court followed case law in the Second Circuit and other circuits to conclude that the Illinois statute proscribed conduct that was inherently coercive and thus inherently likely to present a substantial risk of the use of physical force.  *Id.*  *Patel* is of little value to the Court in this case primarily because § 2907.03(A)(5) does not proscribe inherently coercive conduct but also because *Patel* required the Court to interpret a different statutory definition of "crime of violence."  Section 16(b) of title 18 defines the term as a felony that "by its nature [] involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  This standard is materially different from the ACCA's requirement that the crime involve conduct presenting a serious potential risk of physical injury to another. *Chrzanoski v. Ashcroft*, 327 F.3d 188, 195 n.11 (2d Cir. 2003) (observing that "risk of the use of physical force" and "risk of injury" are not the same); *see also United States v. Sawyers*, 409 F.3d 732, 740 (6th Cir. 2005) (observing same).

[4] Mr. Hargrove's is one such case.  *State v. Hargrove*, 1982 WL 4697, at *1 (Ohio Ct. App. Mar. 17, 1982) (unpublished opinion) ("The record reveals that appellant had various types of sexual relations with his stepdaughters who at the time were eighteen and twenty years old and who consented to the sexual acts.").  However, the facts referred to by the state appeals court are not part of the record for purposes of the applicability of the ACCA enhancement because they were not alleged in the indictment.  *Campbell*, 256 F.3d at 396.

Court's cases and those in other circuits. The state indictment in this case alleges no facts other than that Hargrove engaged in sexual conduct with two of his step-daughters and consequently violated O.R.C. § 2907.03(A)(5). The offense defined in section 2907.03(A)(5) is not inherently coercive. The statute does not require the state to prove lack of consent, nor does it permit the defendant to affirmatively prove consent. Finally, it does not require the state to prove the victim was a minor child or, if not a minor, subject in some sense to the parent-defendant's control. It merely requires the state to show (1) the defendant was the victim's natural, adopted, or step- parent, and (2) the two engaged in sexual conduct. In short, the conduct proscribed by the statute, and charged in the indictment, does not present a serious potential risk of physical injury to another.

In *United States v. Arnold*, the defendant's prior conviction was for assault with intent to commit sexual battery in Tennessee. 58 F.3d 1117, 1121-22 (6th Cir. 1995). Because the offense did not have as an element the use of force, this Court concluded that it was not a crime of violence under the first prong of U.S.S.G. § 4B1.2. *Id*. 1122; *see* U.S.S.G. § 4B1.2(a)(1); 18 U.S.C. § 924(e)(2)(B)(i). The Court remanded to the district court for a determination as to whether, under the categorical approach, the offense satisfied the second prong, i.e., "involves conduct that presents a serious potential risk of physical injury to another." *Arnold*, 58 F.3d at 1124 (quoting § 4B1.2(a)(1)). A remand was necessary, this Court reasoned, because it could not be determined solely by reference to the statute whether this risk existed. On appeal after remand, this Court held, based exclusively on precedents from other circuits involving sexual offenses against young children, that because the defendant's victim was under the age of thirteen, "a serious risk of physical injury [was] inherent in [the charged conduct]." 1996 WL 435275 (unpublished opinion), at * 2 (6th Cir. Aug. 1, 1996). In the earlier case of *United States v. Mack*, this Court had held that the Ohio offense of sexual battery by deception also presents a serious risk of physical injury because the essence of the offense is "requiring another to do something against his or her will." 53 F.3d 126, 128 (6th Cir. 1995) (quoting *United States v. Kaplansky*, 42 F.3d 320, 324 (6th Cir. 1994) (*en banc*)).

In two cases decided six years later, this Court again considered whether certain sexual offenses qualified as crimes of violence under the ACCA or the Guidelines's parallel provision. In *United States v. Campbell*, the Court held that the Michigan offense of engaging in sexual contact with a person with the same blood affinity between the ages of 13 to 16 involves conduct that presents a serious potential risk of physical injury to another. 256 F.3d at 396. The Court's conclusion hinged on the victim's having been a minor between the ages of 13 and 16, the Court viewing that minority as a proxy for coercion and, in turn, the risk of physical injury: "[C]hild molestation crimes typically occur in close quarters, and are generally perpetrated by an adult upon a victim who is not only smaller, weaker, and less experienced, but is also generally susceptible to acceding to the coercive power of adult authority figures." *Id*. (citations and quotations omitted). Later the same year, the Court presented two rationales for its conclusion, in *United States v. Champion*, that the federal crime of enticing a minor to engage in sexually explicit conduct in order to produce a visual depiction, 18 U.S.C. § 2251(a), is a crime of violence under the ACCA's mirror provision in the Guidelines. 248 F.3d at 505-506. First, Congress had found that the conduct proscribed by § 2251(a) is a form of abuse which can result in physical harm; this was enough, in the Court's view, to hold the crime to be one involving conduct that presents a serious potential risk of physical injury. *Champion*, 248 F.3d at 506. As a second rationale, the Court adopted the Seventh Circuit's position that "the likelihood of physical injury increases as the child's age decreases[.]" *Id*. (citing *United States v. Shannon*, 110 F.3d 382, 387 (7th Cir. 1997) (*en banc*)). Because § 2251(a) targets enticement of minors, and because the defendant was charged with enticing a 13 year-old, "even without consideration of Congress' findings, a violation of § 2251(a) would cross the threshold for serious potential risk of physical injury." *Id*. In subsequent cases involving sexual offenses, the victims' minority was again critical to the conclusion that the offenses were crimes of violence under the ACCA or its parallel provision in the Guidelines. *United States v. Alcantara*, 2002 WL 1832572 (6th Cir. Aug. 8, 2002) (unpublished opinion) (improper sexual

contact with defendant's daughter who was under age 13); *United States v. Smith*, 2001 WL 1176422 (6th Cir. Sept. 25, 2001) (unpublished opinion) (second-degree rape of 14 year-old girl). And in the recent case of *United States v. Sawyers*, this Court declined to hold "that every crime involving sexual intercourse with a minor is a per se 'violent felony' under the ACCA." 409 F.3d at 741. The defendant's prior convictions in *Sawyers* included one for statutory rape which, in Tennessee, "can involve consensual sex between a 17 year old and a 21 year old" – conduct, this Court held, that does not necessarily present a serious potential risk of physical injury to another. *Id*. at 741-42.

Other circuits also make the determination of whether a sex crime involves conduct that presents a serious potential risk of physical injury hinge on whether the victim was so young, or the ages of victim and defendant so disparate, that it is appropriate to infer coercion, a likelihood that the victim misapprehended the physical consequences of sex, such as pregnancy or disease, or, finally, a likelihood that those consequences are more dangerous for people the victim's age. The results are not necessarily uniform, however. *See United States v. Sacko*, 247 F.3d 21 (1st Cir. 2001) (statutory rape of a 14 year old girl involves conduct that presents a serious potential risk of physical injury); *United States v. Meader*, 118 F.3d 876 (1st Cir. 1997) (statutory rape and sexual contact with child under 14 years old presents such a risk); *United States v. Pierce*, 278 F.3d 282 (4th Cir. 2002) (taking indecent liberties with a child under 16 years old presents such a risk); *United States v. Houston*, 364 F.3d 243 (5th Cir. 2004) (statutory rape defined by statute as involving a victim under the age of 17 and a defendant of any age does not present such a risk; indictment did not speak to age of victim or defendant); *United States v. Thomas*, 159 F.3d 296 (7th Cir. 1998) (statutory rape defined by statute as involving at least a 22 year-old defendant and a 16 year-old victim does not present such a risk; indictment did not speak to either victim or defendant's age); *United States v. Shannon*, 110 F.3d 382 (7th Cir. 1997) (*en banc*) (statutory rape charged as involving a 17 year-old defendant and a 13 year-old victim presents such a risk); *United States v. Granbois*, 376 F.3d 993 (9th Cir. 2004) (sexual contact with a child between 12 and 16 by a defendant at least four years older presents such a risk); *United States v. Rowland*, 357 F.3d 1193 (10th Cir. 2004) (non-consensual touching of another in lewd manner presents such a risk).

Even in cases involving the offense of incest, either by blood or by law, courts emphasize the victim's young age in reaching the conclusion that the criminal conduct charged presented a serious potential risk of physical injury. *United States v. Martinez-Carillo*, 250 F.3d 1101 (7th Cir. 2001) (a father's digital penetration of his minor daughter presents a serious potential risk of physical injury); *United States v. Melton*, 344 F.3d 1021 (9th Cir. 2003) (natural/adopted/or step-parent's sexual contact with the parent's minor child presents a serious potential risk of physical injury). The Tenth Circuit has suggested that a victim's age is immaterial when the offense is incest perpetrated by the victim's parent. *United States v. Vigil*, 334 F.3d 1215 (10th Cir. 2003). However, the statute at issue in *Vigil* proscribed incestuous conduct with victims under the age of 21 and the Court obviously viewed such victims as being children not yet emancipated from their parents. *See id*. at 1220-22 (emphasizing the youth and vulnerability of "child-victims" in the face of parental authority). *Vigil*, then, does not stand for the proposition that sex between a person and the person's parent (whether natural, adopted, or step) *always* presents a serious potential risk of physical injury, only that such a risk likely exists when the person is a child, even an older child. The point is that a child – whether she is at the young or old end of childhood – is likely to be subject to "parental control," *Melton*, 344 F.3d at 1029, and thus, "to comply with the sexual request by or action of her father out of fear stemming from the belief that physical consequences will flow from noncompliance or simply because she trusts him not to do her wrong." *Martinez-Carillo*, 250 F.3d at 1106; *see also Vigil*, 334 F.3d at 1220.

This case is quite distinguishable. The State of Ohio did not charge Hargrove for engaging in sexual conduct with a minor, or for engaging in sexual conduct with step-daughters who were minors. It charged him with engaging in sexual conduct with his step-daughters. This was enough

to charge him for a crime, since Ohio proscribes sexual conduct with one's step-daughters no matter their ages, but not enough to charge him for a crime involving conduct that presents a serious potential risk of physical injury. In *Campbell*, this Court "recognize[d] that courts have struggled with the issue of the proper age at which sexual conduct with a child constitutes a crime of violence." 256 F.3d at 397 n.10 (discussing the Seventh Circuit's decisions in *Shannon* and *Thomas*); *see also* cases cited *supra*. Here the Court does not even confront that struggle, because Hargrove does not have prior convictions for "sexual conduct with a child." It is the government's burden to prove that Hargrove qualifies for the mandatory 15-year ACCA enhancement. *United States v. Thomas*, 159 F.3d 296, 300 (7th Cir. 1998). The government here relies only on *Campbell* and like cases, i.e., cases involving sexual offenses against minors – cases, moreover, in which the courts' holdings *depended* on the crimes having been committed against child victims. We have reviewed the current status of the case law; we have not found authority for the proposition that consensual sex between adults, one of whom is the other's step-parent, necessarily presents a serious potential risk of physical injury to another. 18 U.S.C. § 924(e)(2)(B)(ii). Absent such authority, we must abstain from drawing the conclusion ourselves, for that would amount to policymaking. As this Court cautioned in *Campbell*, "these are issues that . . . courts, and particularly appeals courts, have neither the expertise nor the authority to resolve in the first instance, and that, in light of the growing number of cases in the area, should be handled expeditiously by the Sentencing Commission and Congress." 256 F.3d at 397 n.10 (quoting *Meader*, 118 F.3d at 885). This is especially true since what hangs in the balance is a mandatory 15-year enhancement to Hargrove's sentence. *Thomas*, 159 F.3d at 300.

Accordingly, the sentence must be vacated and the case remanded for re-sentencing without the 15-year ACCA enhancement.[5]    *See id*. Hargrove's Sentencing Guidelines claim is moot because on remand, the district court, no longer bound by the Sentencing Guidelines, must sentence Hargrove in accordance with the sentencing regime established by the Supreme Court in *United States v. Booker*, 125 S. Ct. 738 (2005). *See*, *e.g*., *Sawyers*, 409 F.3d at 743.

### III. CONCLUSION

The conviction is affirmed and the matter is remanded for re-sentencing consistent with this opinion.

---

[5] In *United States v. Sawyers*, this Court held that the defendant's statutory rape conviction was not categorically a violent felony under the ACCA but remanded the case to the district court for further consideration. 409 F.3d at 742. The *Sawyers* Court reached this disposition because the district court had not considered all of the materials the government had presented to it; it had only considered the statutory definition of the offense. Consistent with the Supreme Court's decision in *Shepard v. United States*, 125 S. Ct. 1254 (2005), which dealt with ACCA enhancements based on prior convictions stemming from guilty pleas, this Court instructed the district court to consider the charging document, plea agreement, transcript of plea colloquy, and any factual findings assented to by the defendant in the plea colloquy. *Sawyers*, 409 F.3d at 742. Hargrove did not plead guilty to sexual battery, but was convicted after a trial. Consistent with *Taylor*, the Supreme Court's decision on ACCA enhancements for prior convictions following trials, the district court in this case considered both the statutory definition of the offense and the charging document, two of the three permissible sources of information in cases where the prior offense is defined broadly enough that it encompasses some conduct not within the ACCA's scope. 495 U.S. at 602; *United States v. Seaton*, 45 F.3d 108, 111 (6th Cir. 1995). Because the government has never relied on the third permissible source of information, jury instructions, the district court in this case considered all of the materials presented to it. A remand for further consideration is therefore unnecessary.