[Cite as *In re I.R.H.*, 2014-Ohio-1180.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| I.R.H. | ) | |
| | ) | CASE NO. 13 MA 158 |
| | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from Court of Common Pleas, Juvenile Division of Mahoning County, Ohio
Case No. 2012JG01507

JUDGMENT:    Reversed and Remanded

APPEARANCES:
For Appellees    Attorney Christopher A. Maruca
201 East Commerce Street, Suite 316
Youngstown, Ohio 44503

For Appellant    Attorney Amanda J. Jackson
1265 E. State Street
Salem, Ohio 44460

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: March 20, 2014

DONOFRIO, J.

{¶1} Appellant, David Harris, appeals from a Mahoning County Common Pleas Court Juvenile Division decision granting the motion for grandparents' visitation filed by appellees, John and Naomi Shenesky.

{¶2} This case involves the visitation of I.H. (d.o.b. 2/22/06). I.H. is the daughter of Carrie Harris and appellant. I.H.'s parents were married at the time of her birth, but divorced in 2009. Carrie and appellant had shared parenting of I.H. after the divorce. Appellees are Carrie's parents and I.H.'s maternal grandparents.

{¶3} On December 22, 2011, Carrie was killed in an automobile accident. Prior to Carrie's death, appellees frequently visited with I.H. After Carrie's death, appellant continued to allow appellees to visit with I.H. at his home and invited them to attend her soccer games and dance recitals. Disagreements eventually arose between appellant and appellees. At a June 2012 soccer game, appellant and appellees got into an argument after which appellees' time with I.H. greatly diminished, as they ceased contacting appellee.

{¶4} Appellees filed a motion for grandparents' visitation on August 31, 2012. A hearing was later held before a magistrate who heard testimony from the parties, Harris's mother, and the guardian ad litem (GAL).

{¶5} The magistrate made numerous findings as follows. Appellant is a fit parent. Prior to appellant's and Carrie's divorce, appellees visited with I.H. four to six times a year. After the divorce, appellees visited with I.H. more often. Appellees live approximately 30 minutes from appellant and I.H. Appellant is a high school tutor during the school year and is off all summer. I.H. takes part in activities including plays, soccer, and swimming lessons. Since her mother's death, I.H. suffers from separation anxiety and is unable to attend sleepovers with her friends or family members. Appellant is concerned about appellees' ability to take care of I.H. Appellant has allowed appellees limited visitation with I.H. at a restaurant in Columbiana once every other week. Appellant believes this visitation is adequate and additional visitation should not be granted. The GAL believes it to be in I.H.'s best interest to have a relationship with appellees.

{¶6} The magistrate then concluded it was important for I.H. to continue to nurture a relationship with appellees. He also found that appellant agreed. Therefore, he made this an order of the court. However, the magistrate went on to find that appellant's concerns were real and not vindictive. Therefore, he overruled appellees' motion for expanded visitation.

{¶7} Appellees filed objections to the magistrate's decision. They argued the magistrate abused his discretion in denying their motion. They also requested an oral hearing on their objections.

{¶8} The trial court scheduled a hearing on the objections. But a week before the scheduled hearing, the court cancelled the hearing and issued a judgment entry noting that an oral hearing was not mandatory. The court stated that it reviewed the record and transcript and found the objections to be well taken. It noted the parties had been unable to reach a visitation schedule agreement. It found that appellees have a healthy relationship with I.H. The court further found that communications between appellant and appellees are strained and therefore, it was in I.H.'s best interest that the court establish a visitation schedule. The court granted appellees visitation with I.H. in accordance with the court's standard visitation schedule for non-residential parents. This includes overnight visits every other weekend and visits every Wednesday evening. It also includes alternating holiday visitation and evenly splitting summer vacations. The court noted that if the parties came to some other agreed schedule they could submit it to the court for approval.

{¶9} Appellant filed a timely notice of appeal on September 27, 2013.

{¶10} On appellant's motion, this court granted a stay of the trial court's order pending this appeal.

{¶11} Appellant raises two assignments of error, the first of which states:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION UNDER THE FOURTEENTH AMENDMENT'S DUE PROCESS CLAUSE BY FAILING TO AFFORD APPELLANT/FATHER'S PARENTAL DECISION SPECIAL WEIGHT.

{¶12} Appellant contends that R.C. 3109.11 is unconstitutional as applied to him in this case. He asserts that because the court found he was a fit parent it should have given special weight to his wishes regarding visitation. He also points out the magistrate found that he has always made decisions that were in his daughter's best interest. Therefore, appellant argues, he should have the right to decide when, where, and for how long his daughter visits with her grandparents. Appellant further points out that he has provided appellees with the opportunity to visit I.H. at his home, to speak to I.H. on the telephone, to "Skype" with her, and to attend her soccer games and dance recitals. And appellant asserts the reason the contact stopped between appellees and I.H. after the June 2012 argument was because appellees stopped making requests to see or talk to I.H.

{¶13} Appellant next argues there was no compelling reason presented by appellees to disregard his wishes. In fact, he states, the evidence was that I.H. is doing well in school, has many friends, and is involved in several extracurricular activities. And he notes there was evidence that I.H. suffers from separation anxiety since the loss of her mother. Thus, he contends that forcing her to visit with anyone, even her grandparents, may be harmful to her.

{¶14} Appellant goes on to argue that even if this court finds some compelling reason for a visitation order, the standard visitation order for non-residential parents ordered by the trial court is not narrowly tailored to fit this case. He points out that even when I.H.'s mother was alive, appellees did not see I.H. as often as the standard visitation order calls for. He argues that the standard visitation order is too extensive and points to the every-other-weekend and half of all school vacations as examples. Appellant also asserts there is no case law that supports granting grandparents a visitation schedule equivalent to that of a non-residential parent.

{¶15} Finally, appellant points out that when asked why they never contacted him to request visitation after the argument between the parties, appellees stated that they did not feel comfortable doing so and would rather have the court "suggest" visitation time. Appellant argues that appellees' "uncomfortableness" was not an

appropriate reason for a court to get involved in a family matter.

**{¶16}** R.C. 3109.11 provides for grandparent visitation rights when an unmarried parent is deceased. The statute allows a court to grant a grandparent reasonable visitation when it is in the best interest of the minor child. In examining whether to grant visitation rights, the court must consider all relevant factors, including, but not limited to, the best interest factors set forth in R.C. 3109.051(D) of the Revised Code. R.C. 3109.11.

**{¶17}** When determining whether a statute is unconstitutional as applied, the burden is on the attacking party to present clear and convincing evidence of a presently existing set of facts which makes the statute void and unconstitutional. *State v. Freeman*, 7th Dist. No. 02-JE-42, 2003-Ohio-6730, citing *State v. Dario*, 106 Ohio App.3d 232, 665 N.E.2d 759 (1st Dist.1995).

**{¶18}** Appellant cites to this court's decision in *Oliver v. Feldner*, 149 Ohio App.3d 114, 2002-Ohio-3209, 776 N.E.2d 499 (7th Dist.), in support of his position. In *Oliver*, the trial court granted grandparent visitation to the paternal grandparents of a child whose father was deceased. The child's mother was opposed to the grandparents' visitation. The trial court found it was in the child's best interest to have visitation with the grandparents. The trial court noted it should "give special weight to the decision of a parent," but rejected the mother's reasons for denying visitation. The trial court granted the grandparents four to five hours per month of visitation at their home. The mother appealed.

**{¶19}** On appeal, the mother argued that the trial court did not properly consider the best interest factors and did not give special weight to her wishes as required by *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). She further asserted the trial court's visitation order was an unconstitutional infringement of her fundamental right to raise her daughter as she saw fit.

**{¶20}** This court reviewed the *Troxel* decision in detail and pointed out that *Troxel* requires the trial court give "special weight" to a parent's wishes. *Id.* at ¶56. We determined that "special weight" meant the deference provided to the parent's

wishes could only be overcome by some compelling governmental interest and overwhelmingly clear circumstances supporting that governmental interest. *Id.* at ¶59. We then concluded:

> It is clear from *Troxel* that the "special weight" that must be given to a parent's childrearing decisions has constitutional implications, and to overcome that "special weight," there must be some showing of compelling reasons and circumstances to disregard the parent's wishes. We find no such compelling reasons either in the nonparental-visitation statute or the evidence presented in this case. Because we find no compelling interest at stake, it is also apparent that we cannot find that the resulting visitation order was narrowly tailored to achieve a compelling interest. Therefore, as *applied to the facts of this case*, the trial court's decision must be overturned.

*Id.* at ¶66; (Emphasis sic.)

{¶21} After *Oliver*, the Ninth District was faced with a similar case in *Estate of Harrold v. Collier*, 9th Dist. No. 03CA0064, 2004-Ohio-4331. In that case, the child had resided with her mother and maternal grandparents. Years after the mother died, the father was granted custody of the child and the grandparents filed a motion for visitation. The magistrate granted visitation to the grandparents. The father filed objections. The trial court found the child's interest in maintaining a relationship with the grandparents outweighed the father's wishes for no visitation. But it found *Troxel v. Granville*, required courts to find "overwhelmingly clear circumstances" in support of forcing visitation for the benefit of the child over the opposition of the parent. Consequently, the trial court ruled that although the statutory factors seemed to support visitation with the grandparents over the father's objection, there was insufficient proof to find overwhelmingly clear circumstances for overruling the father's wishes. Therefore, the trial court dismissed the grandparents' motion for visitation.

**{¶22}** On appeal, the Ninth District found *Troxel's* holding to be narrowly construed to mean that the "sweeping overbreadth" of the Washington state nonparental-visitation statute rendered the statute unconstitutional when applied. *Id.* at ¶¶14, 18. The appellate court reversed the trial court's dismissal of the grandparent's visitation motion and remanded the case to the trial court.

**{¶23}** On the father's motion, the appellate court found its decision to be in conflict with *Oliver*, supra, on the following issue: "Whether Ohio Courts are obligated to afford 'special weight' to the wishes of the parents of minor children concerning non-parental visitation as outlined in *Troxel v. Granville*[.]" The Ohio Supreme Court determined that a conflict did exist and also accepted a discretionary appeal. *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165.

**{¶24}** The Court first analyzed *Troxel*, 530 U.S. 57. It observed that at issue in *Troxel* was a Washington statute that permitted "[a]ny person" to petition for visitation rights "at any time" and authorized a court to grant such rights whenever the visitation may serve a child's best interest. *Id.* at ¶8, citing *Troxel*, at 60. The Troxels petitioned the court for visitation of their granddaughters following the death of the girls' father, their son. The mother objected. The trial court granted visitation, finding it to be in the children's best interest. The Washington Supreme Court held that the Troxels were not entitled to a visitation order, because the Washington state statute permitting such visitation unconstitutionally infringed on the fundamental right of parents to rear their children.

**{¶25}** On appeal, the United States Supreme Court found Washington's visitation statute unconstitutionally infringed on the mother's fundamental right to make decisions concerning the care, custody, and control of her children. In reaching this conclusion, the Court recognized that "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Id.* at ¶9, citing *Troxel*, at 66. The Court ruled that the trial court disregarded the traditional presumption that a fit parent acts in the best interest of his or her child. *Id.* at ¶10, citing *Troxel*, at 69. A

plurality of the Court went on to find that when the trial court intervened into the private realm of the family, "it gave no special weight at all" to the mother's determination of her children's best interests. *Id.* at ¶11, quoting *Troxel*, at 69. The plurality found that if a fit parent's decision regarding nonparental visitation became subject to judicial review, "the court must accord *at least some special weight* to the parent's own determination." (Emphasis sic.) *Id.*, quoting *Troxel*, at 70.

**{¶26}** The *Harrold* Court determined it would adopt *Troxel's* plurality view and held, "Ohio courts are obligated to afford some special weight to the wishes of parents of minor children when considering petitions for nonparental visitation made pursuant to R.C. 3109.11 or 3109.12." *Id.* at paragraph one of the syllabus.

**{¶27}** The Court went on to address the argument that Ohio's nonparental visitation statutes unconstitutionally infringed on a parent's fundamental right to make decisions regarding the care, custody, and control of his or her child. The Court found the statutes constitutional after applying a strict-scrutiny test. *Id.* at ¶¶13, 40. It determined the Ohio statutes were more narrowly tailored than the Washington statute at issue in *Troxel* and also took into consideration the parent's wishes and concerns. *Id.* at ¶¶41, 42.

**{¶28}** The Court also addressed the issue surrounding the presumption that a fit parent acts in his or her child's best interest:

> Further, while *Troxel* states that there is a presumption that fit parents act in the best interest of their children, nothing in *Troxel* indicates that this presumption is irrefutable. The trial court's analysis of the best interests of a child need not end once a parent has articulated his or her wishes. By stating in *Troxel* that a trial court must accord at least some special weight to the parent's wishes, the United States Supreme Court plurality did not declare that factor to be the sole determinant of the child's best interest. Moreover, nothing in *Troxel* suggests that a parent's wishes should be placed before a child's best interest. The state has a compelling interest in protecting a child's best interest, *In re*

*T.R.* (1990), 52 Ohio St.3d 6, 18, 556 N.E.2d 439, and Ohio's nonparental-visitation statutes are narrowly tailored to serve that compelling interest. They are not, therefore, unconstitutional under *Troxel.*

*Id.* at ¶44.

**{¶29}** In applying its findings to the facts of the case, the *Harrold* Court found the trial court properly placed the burden of proving that visitation would be in the child's best interest on the grandparents, thereby honoring the presumption that a fit parent acts in the best interest of his or her child. *Id.* at ¶45. It also noted the trial court expressly weighed the father's opposition to visitation as a factor in its decision, which the Court found protected the father's due-process rights. *Id.* And it pointed out the trial court ultimately decided the child's best interests in maintaining her relationship with her grandparents outweighed the father's desire for no visitation. *Id.* The Court observed that while the trial court did not use the words "special weight," it was clear that it gave due deference to the father's wishes and concerns regarding visitation before determining it was in the child's best interest to grant the grandparents' motion for visitation. *Id.* Therefore, the Court affirmed the Ninth District's decision.

**{¶30}** Based on the Ohio Supreme Court's analysis in *Harrold*, we conclude the trial court in this case did not constitutionally apply R.C. 3109.11 to appellant. While the magistrate indicated through his analysis that he gave appellant's wishes special weight, the trial court made no such indication. There is nothing in the trial court's judgment entry to suggest that it weighed appellant's opposition to visitation in reaching its decision. Thus, appellant's due process rights were not protected. The trial court, without any recognition of appellant's wishes, overruled the magistrate's decision that denied appellees' motion for visitation.

**{¶31}** Thus, appellant met his burden of showing that, under the presently existing set of facts, the trial court unconstitutionally applied R.C. 3109.11 to him. Appellant's other arguments are more properly addressed in his second assignment

of error, which deals with determining what is in I.H.'s best interest.

**{¶32}** Accordingly, appellant's first assignment of error has merit.

**{¶33}** Appellant's second assignment of error states:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION
BY FAILING TO CONSIDER THE BEST INTERESTS OF THE CHILD
AS SET FORTH IN OHIO REVISED CODE SECTION 3109.051(D).

**{¶34}** Here appellant points out the trial court failed to address any of the statutory best interest factors in overruling the magistrate's decision that it was not in I.H.'s best interest to grant appellees an expanded visitation schedule. He points to several factors that he contends support his position. First, he notes that while I.H. knows appellees and has spent some time with them, the amount of time has not been significant and an order for her to spend every other weekend with them is a significant change to I.H.'s life and not in her best interest. Second, he points out that he works a teacher's schedule and therefore is available to be with I.H. when she is not at school. Third, he points out that I.H. has suffered from separation anxiety since her mother's death and does not want to be away from him for extended periods of time. And he asserts that the visitation schedule imposed by the court would interfere with I.H.'s involvement in dance, soccer, and church. Fourth, appellant also points to his concerns with appellees' mental health. He asserts that the maternal grandmother even lied under oath about her mental health issues. Finally, appellant points to his own wishes and concerns as he expressed to the court that it not set any specific visitation schedule.

**{¶35}** In reviewing a trial court's grant of grandparent visitation and the court's analysis of the best interest factors, we apply an abuse of discretion standard of review. *In re F.D.*, 2d Dist. No. 23358, 2009-Ohio-4788, ¶10. Abuse of discretion connotes more than an error of law or judgment; it implies the trial court's judgment was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶36}** R.C. 3901.15(D) sets out the best interest factors for the court to consider when determining visitation issues.  The R.C. 3901.15(D) factors are:

(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;

(2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers * * *, the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

(11) In relation to parenting time, whether either parent previously has * * * [been the perpetrator in a case where a child has been abused or neglected].

(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has * * * [been the perpetrator in a case where a child has been abused or neglected, or been convicted of certain domestic violence offenses, or acted in a manner resulting in a child being an abused child or a neglected child;

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

**{¶37}** The evidence, as applied to the above factors, was as follows.

**{¶38}** As to the first factor, Mrs. Shenesky testified that prior to appellant's and Carrie's divorce, appellees only saw I.H. on holidays and birthdays. (Tr. 9). After the divorce in 2009, appellees visited with I.H. at least twice a month. (Tr. 11, 31). Mrs. Shenesky stated that I.H. occasionally spent the night at appellees' home and I.H. enjoyed her time there. (Tr. 12). She testified that she and her husband had a strong relationship with I.H. (Tr. 12). Mrs. Shenesky further testified that after Carrie died in December 2011, appellant continued to allow I.H. to visit with appellees at his home and they attended her soccer games. (Tr. 13). This continued until June 2012, when the parties got into an argument at a soccer game regarding an insurance policy. (Tr. 17, 36-37). After the argument, appellees stopped calling appellant and asking to visit with I.H. (Tr. 37). Mrs. Shenesky acknowledged that appellant extended an offer to appellees to visit with I.H. at his home but they did not

respond because they did not feel comfortable going to his home. (Tr. 38). She also acknowledged that appellant had been allowing I.H. to visit with appellees at the Dutch House restaurant on Fridays. (Tr. 51-52). Mr. Shenesky testified that I.H. has been enjoying those visits where they talk about school, books I.H. is reading, and church. (Tr. 71).

**{¶39}** Additionally, appellant testified that he allowed I.H. to talk on the phone with appellees whenever they called and "Skype" with them on the computer. (Tr. 96). And he stated that up until the argument at the soccer game, appellees frequently requested and he frequently allowed them to come to his house to visit I.H. (Tr. 95-96).

**{¶40}** As to the second factor, appellant and I.H. reside in Columbiana, Ohio. Appellees reside in Koppel, Pennsylvania, which is approximately 30 minutes from Columbiana. (Tr. 34).

**{¶41}** As to the third factor, Mrs. Shenesky stated that she works steady night turn and her husband is retired. (Tr. 44, 47). Appellant testified that he is a high school tutor and is off during the summer and is available to I.H. when she is not in school. (Tr. 99, 103).

**{¶42}** As to the fourth factor, I.H. was seven years old at the time of the hearing.

**{¶43}** As to the fifth factor, appellant stated that I.H is involved in dance and soccer, and would be starting swim lessons. (Tr. 102). He also stated she is very social and enjoys playing with her friends. (Tr. 102). And appellant testified I.H. loves school and does very well. (Tr. 105).

**{¶44}** The sixth factor, regarding I.H.'s wishes and concerns as expressed to the court, is not applicable because the court did not interview I.H.

**{¶45}** As to the seventh factor, there appeared to be no concerns regarding I.H.'s health and safety.

**{¶46}** The eighth factor, regarding sibling relationships, is not applicable because I.H. does not have any siblings.

**{¶47}** As to the ninth factor, the physical and mental health of the parties, Mrs. Shenesky testified that neither she nor her husband suffer from any physical disabilities. (Tr. 44). She further testified that she has never been treated for depression or anxiety and has never taken any medication for those conditions. (Tr. 44-45). Mr. Shenesky testified that he takes a mild anti-depressant and attends grief therapy since he is still dealing with the death of his daughter and his trouble regarding visitation with I.H. (Tr. 68). Additionally, he testified that Mrs. Shenesky is also attending counseling and taking medication. (Tr. 79). And appellant testified he has no physical or mental health issues. (Tr. 112). Appellant also voiced concerns regarding Mrs. Shenesky's mental health. (Tr. 113). But the GAL opined that appellant's concerns were unfounded. (Tr. 153).

**{¶48}** As to the tenth factor, dealing with the rescheduling of missed parenting time, does not appear to apply here.

**{¶49}** The eleventh and twelfth factors are inapplicable as there was no evidence that any of the parties were ever involved with the matters covered in those factors such as child abuse or neglect.

**{¶50}** The thirteenth factor was likewise inapplicable because there had not previously been a court order regarding visitation.

**{¶51}** As to the fourteenth factor, appellant lives in Ohio. Appellees live in Pennsylvania.

**{¶52}** As to the fifteenth factor, appellant's wishes and concerns, appellant testified regarding I.H.'s adjustment to her mother's death. He stated that she is handling it the best she can. (Tr. 104). But he stated she suffers from separation anxiety when she is away from him. (Tr. 104). Even when she visits a friend's house, appellant stated, I.H. wants him to stay with her. (Tr. 120). He stated that she talks to the school counselor. (Tr. 105). Appellant further testified that I.H. does not spend the night at friend's houses. (Tr. 108). He stated she tried it once but I.H. was not comfortable with it. (Tr. 108). Appellant testified I.H. does not even spend the night at his parents' house, even though she used to before Carrie's death. (Tr.

108). Appellant stated he does not want to force I.H to do something she is uncomfortable with. (Tr. 109). He testified he was "scared to death" about how restricted guidelines regarding visitation would affect I.H. (Tr. 109). However, appellant did agree that it was important for I.H. to maintain a relationship with appellees. (Tr. 109). He stated that he approved of the weekly visits at the Dutch House. (Tr. 110-111). Appellant emphasized though that I.H. does not like it when he is not with her. (Tr. 120).

{¶53} Appellant's concerns were also addressed by his mother, Dianne Harris. Mrs. Harris testified that I.H. is going through "an anxiety separation." (Tr. 143). She stated that I.H. "clings" to appellant and that apart from going to school, I.H. is always with appellant. (Tr. 143). Mrs. Harris stated that before Carrie's accident, I.H. used to stay with her for extended periods of time but since the accident, she no longer does. (Tr. 143). Mrs. Harris testified that the only time she spends with I.H. without appellant present is when she takes I.H. to the bus stop in the morning. (Tr. 144).

{¶54} And finally as to any other best interest factor, the GAL testified she was in favor of the transitional visitation schedule suggested by appellees and she believed that schedule to be in I.H.'s best interest. (Tr. 155, 160, 163). She also testified, however, that when she spoke with I.H., I.H. expressed to her that while she wanted to visit with appellees, she wanted them to come to her house and she was not comfortable going to appellees' house. (Tr. 180). And the GAL testified that she believes appellant is a good, fit father who makes decisions in I.H.'s best interest in every area except when it comes to appellees. (Tr. 183, 185).

{¶55} In the present case, the magistrate recognized in his decision the presumption that a fit parent acts in his child's best interest and that the court must give some special weight to the parent's wishes. The magistrate went on to find that appellant is a fit parent and recognized that appellant was concerned about appellees' ability to care for I.H. The magistrate further noted that appellant believed the limited visitation he allowed between I.H. and appellees was adequate. And the

magistrate noted appellant's concern about I.H.'s separation anxiety. The magistrate then found it was important for I.H. to continue to nurture a relationship with appellees and noted that appellant agreed. Thus, the magistrate ordered the parties continue to nurture the relationship between I.H. and appellees. Yet the magistrate went on to overrule appellees' motion for expanded visitation. The reason he did so was because he gave special weight to appellant's wishes and concerns: "The concerns of the Father are real and not vindictive, especially about the Subject Child's separation anxiety issue. Wherefore, the motion for the Court to order expanded visitation is overruled."

{¶56} The trial court, however, reversed the magistrate's decision. It found that appellees have a healthy relationship with I.H. It further found communication between the parties was strained. Therefore, the court found in was in I.H.'s best interest for it to establish a visitation schedule. The court ordered the standard visitation schedule for non-residential parents.

{¶57} The standard visitation schedule provides in part as follows. I.H. will visit with appellees on alternating weekends from 6:00 p.m. Friday until 6:00 p.m. Sunday and from 5:00 p.m. to 8:00 p.m. every Wednesday. Appellant must give appellees written notice at least seven-days prior to any travel with I.H. to exceed 48 hours. Appellant must give appellees written notice at least 60-days prior to moving. Appellees are entitled to access I.H.'s school and medical records on the same terms as appellant. Appellees and appellant are to alternate visitation on all major holidays and I.H.'s birthday and school vacations. I.H. will spend half of her summer vacations with appellant and half with appellees.

{¶58} Applying the best interest factors to the case at bar reveals that a visitation order is in I.H.'s best interest. But the standard order of visitation ordered by the trial court is excessive.

{¶59} Firstly, and most importantly, the trial court did not give special weight to appellant's wishes and concerns regarding visitation. This alone was an abuse of discretion. There was no question that appellant is a fit parent. And appellant gave

heart-felt reasons for not wanting a court-ordered visitation schedule. As the magistrate found, appellant is genuinely concerned about I.H.'s anxiety about being separated from him. And appellant does not want to force I.H. into any situation that could make her uncomfortable. The court's judgment entry, however, gives no indication that it gave appellant's wishes and concerns any special weight at all. The trial court's order, which goes above and beyond appellees' requested schedule and overrules the magistrate's decision, fails to consider appellant's wishes and concerns

{¶60} The best-interest factors indicate, however, that visitation with appellees is in I.H.'s best interest. All parties agreed it was in I.H.'s best interest to maintain a relationship with appellees. The GAL found visitation, as suggested by appellees, to be in I.H.'s best interest. I.H. has known and visited with appellees her entire life. Mrs. Shenesky testified she has a strong relationship with I.H. The parties live approximately 30 minutes away, which makes visits feasible. The parties' employment schedules also make visits feasible. I.H. is involved in several activities, but still has time for at least weekly dinner visits with appellees. And while appellant did raise some concern regarding appellees' mental health, the GAL found these concerns to be unfounded. Weighing these factors and giving special weight to appellant's wishes and concerns, a visitation schedule with appellees is in I.H.'s best interest, yet not to the extent that the trial court ordered.

{¶61} There do not appear to be any factually similar cases where such an extensive grandparent visitation order was issued. There are at least two other cases where the trial court granted the grandparents a standard visitation order. However, the facts of those cases are very different than those in the case at bar.

{¶62} In *In re A.C.*, 9th Dist. No. 23154, 2006-Ohio-6155, A.C.'s mother died when she was eight years old. Her father then left A.C. in her grandmother's custody while he "got his life together." The father visited with A.C. during that time. After two years had passed during which the grandmother cared for A.C., the father told the grandmother he was ready to have A.C. return to his home. The grandmother filed a motion for legal custody of A.C. The trial court awarded the father legal custody of

A.C. and granted the grandmother standard visitation. The grandmother then appealed the denial of her motion for legal custody.

{¶63} And in *Harrold v. Collier*, 9th Dist. No. 06CA0010, 2006-Ohio-5634, a later decision following the Ohio Supreme Court's remand to the trial court for a visitation schedule in *Harrold*, 107 Ohio St.3d 44, the trial court granted the maternal grandparents a visitation schedule very similar to the standard visitation schedule but eliminating the mid-week visit. The father appealed arguing the schedule was grossly excessive for the grandparents. The Ninth District disagreed. The court noted that for the first five years of her life, the child lived with the grandparents and from the ages of two until five the grandparents were the child's legal custodians. *Id.* at ¶11. The court noted that because the grandparents functioned as the child's residential parents for a majority of her life, the trial court's visitation schedule awarding them visitation similar to that of a non-residential parent could not be said to be unreasonable. *Id.* The court also noted that the father never articulated his reason for his opposition to visitation but only stated that he had a right to the care, custody, and control of his child. *Id.* ¶10. The court stated that the father had not provided a single reason why visitation was unreasonable. *Id.*

{¶64} In the present case, unlike in *A.C.* and *Harrold*, I.H. has never lived with appellees. She lived with her parents when they were married, and after they divorced, she resided alternately at her mother's house and appellant's house, which were across the street from each other. Thus, she has never been in appellees' custody. Moreover, unlike in *Harrold*, appellant has clearly articulated his reason for his opposition to the proposed visitation schedule.

{¶65} Thus, the cases which have granted standard visitation to grandparents do not offer any support to the visitation order in this case.

{¶66} Another problem with the standard order is that appellees did not even seek such an extensive visitation schedule. Mrs. Shenesky testified regarding what type of visitation appellees were seeking. Her counsel explained to her what the standard order of visitation included and she specifically testified that she was *not*

seeking the standard visitation order. (Tr. 24-25). Instead, she testified regarding an order where appellees would gradually increase their visitation time. She stated that for the first month they would visit for two hours a week. (Tr. 25). For the next month, they would visit for four hours a week. (Tr. 25). For the third month, they would visit for eight hours a week. (Tr. 25). And by the fourth month, she asked that appellees have one overnight visit every other weekend. (Tr. 26).

**{¶67}** As to summer visitation, Mrs. Shenesky testified that appellees were not asking to have I.H. for half of the summer, but they would like to see her during the summer. (Tr. 26). She stated they were asking the court to have two to three weeks of visitation with I.H. during the 12-week summer. (Tr. 26, 28). And as to holidays, Mrs. Shenesky testified:

> Q.     As far as holidays, such as Easter, which is, you know, coming up this weekend and Christmas and Thanksgiving, are you asking for a little bit of times on those holidays?
>
> A.     Not directly on the holiday. I - - I would think that I would want Dave [appellant] to have his time with [I.H.] on those holidays. I would - - you know, a day before, three days before, five days after. I'm so willing to just have her whenever. It doesn't necessarily mean a holiday, you know what I mean?
>
> Q.     I - - so you're saying you can celebrate Christmas on the 23rd hypothetically?
>
> A.     Yes.
>
> Q.     But you want some time around there to celebrate the holidays with her?
>
> A.     Yes, please. Yes.

(Tr. 28-29).

**{¶68}** The trial court's standard visitation order is much more extensive than what appellees requested. Additionally, it does not allow for any adjustment period

as even Mrs. Shenesky recognized would be best. It simply jumps right into a two-night visit at appellees' home. And it elevates the grandparents into the role of a non-residential parent.

{¶69} In conclusion, the trial court abused its discretion in granting the standard order of visitation in this case. There is no case law to support such an order. Moreover, appellees did not request such an order. Most importantly, the court did not give the required special weight to appellant's wishes regarding visitation and his concerns regarding I.H.'s separation anxiety. Thus, while the best interest factors support a visitation order, the standard order of visitation issued in this case is excessive and was an abuse of discretion by the trial court.

{¶70} Accordingly, appellant's second assignment of error has merit.

{¶71} For the reasons stated above, the trial court's judgment is hereby reversed. The matter is remanded for the trial court to fashion a more limited, reasonable visitation schedule, not to exceed the schedule suggested by appellees.

Waite, J., concurs.

DeGenaro, P.J., concurs.