# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY


IN RE:

D.M.W. MINOR CHILD.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 BE 0021

---

Juvenile Appeal from the
Court of Common Pleas, Juvenile Division
of Belmont County, Ohio
Case No. 17 JG 398

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Mary F. Corabi*, for Appellant and

*D.W.,* pro se.


Dated: December 3, 2025

**Robb, P.J.**

{¶1}   Appellant, Grandmother, appeals the April 16, 2025 judgment reducing her grandparent companionship time with her grandson, D.M.W.  She contends the trial court's decision is contrary to the best interest of the child and an abuse of discretion.  For the following reasons, we affirm.

Statement of the Case

{¶2}   The minor child resided with his mother and Grandmother in Ohio since his birth in March of 2016 until his mother's death in June of 2018.

{¶3}   Appellee, Father, was designated the residential parent after the death of the child's mother.  Grandmother was granted companionship time with the child after seeking custody.  Father is in the military and resides in El Paso, Texas.  Grandmother lives in Belmont County.

{¶4}   In a prior appeal decided in December of 2021, we found Father was in contempt of court for failing to abide by the visitation order.  We also found no remedy was available.  Nonetheless, we directed the trial court to consider Father's contempt as a factor regarding his suitability when it undertook the best interest analysis required on remand to determine whether he was an unsuitable parent.  We also directed the trial court to grant Grandmother additional visitation time in the event it found Father was not unsuitable.  *In re, D.M.W.*, 2021-Ohio-4657, ¶ 56 (7th Dist.).

{¶5}   On remand, the trial court reviewed the best interest factors, found Father suitable, and affirmed its grant of custody to him.  The court found the minor child has a close and loving relationship with both Father and Grandmother and does not want to choose between the two.  The court denied Grandmother's motion to reallocate custodial rights and responsibilities.  Consistent with our directive, the court granted Grandmother summer break companionship time from June 15 through July 27 annually.  It also granted her an unspecified duration of companionship time during Christmas break every year and one week of companionship in alternating years during the child's spring break.  Thus, Grandmother was awarded visitation for 42 days in the summer, approximately seven days during winter break, and seven days every other year during spring break, for a total of approximately 56 days in even years and 49 days in odd numbered years.  The court

ordered the parties to equally share the travel expenses for Grandmother's visitation. (March 29, 2023 Judgment.)

{¶6} Grandmother subsequently sought emergency custody of the minor child due to Father's deployment in the Middle East for six months. The trial court denied her request, but granted her additional companionship time during his deployment on an alternating weekly schedule. D.M.W. was in the care and custody of Father's family members at the time, who also resided in Ohio, such that alternating weeks were possible. (July 13, 2023 Judgment.)

{¶7} Father was subsequently granted a stay of the proceedings until February 15, 2024 due to his deployment. (September 26, 2023 Judgment.)

{¶8} In April of 2024, Father filed a motion for change of companionship time. First, he requested the court to cease all visits with Grandmother pending a mental health evaluation of her. Father alleged she repeatedly claimed the minor child was ill and in need of medical attention, but that the symptoms or issues only arose while the child was in her care. Second, Father sought to reduce the duration of Grandmother's summer visitation. Third, he asked the court to order her to pay all travel expenses for her companionship time. (April 3, 2024 Motion.)

{¶9} In response, Grandmother contended that due to the father's military status, the minor child rarely saw him. Grandmother pointed out the child had been alternating living between her and the child's paternal grandmother. Additionally, Grandmother alleged she was communicating her concerns about the minor's health in order to comply with the order granting her companionship time. (April 26, 2024 Response.)

{¶10} The testimony presented at the magistrate's hearing held in December of 2024 includes the following. Father confirmed he lives in El Paso, Texas. Father indicated he and Grandmother agreed she would get one-week visitation with the child after Christmas during the child's school break. Father then argued he should not have to pay any costs associated with her visitation.

{¶11} He also urged the court to reduce Grandmother's companionship time during the summer. Father said the child's break from school was currently six weeks long, such that Grandmother's time consumed the majority of D.M.W.'s summer break. As a result, Father claimed he does not get to enjoy downtime with the child and the child

does not get to visit with his sister. In response to a question by the court, Father explained he does not have a formal visitation agreement governing his time with his daughter, D.M.W.'s half sibling. Father said his daughter currently lives in Kentucky with her mother, but they are moving to North Carolina in the near future. Father said he enjoys visitation with her after school lets out for the summer "whenever . . . me and her mom can agree on her flying her to me and then I fly her back." (December 13, 2024 Tr. 17-18.)

{¶12} Grandmother also testified. She confirmed D.M.W. was 8 1/2 at the time of the hearing. She said he has friends his age in her neighborhood that he plays with while visiting her. She also described him having countless cousins located in Ohio, who they visit during his companionship time with her. Grandmother also testified that during her companionship time with D.M.W., she facilitated visits with Father's family members as well, who also reside in Ohio. (December 13, 2024 Tr. 19-25.)

{¶13} Grandmother's neighbor Joanne Flowers also testified. She lives next-door and has three children. Her children play with D.M.W. She described Grandmother as a loving grandmother who has a positive and close relationship with D.M.W. (December 13, 2024 Tr. 27.)

{¶14} After the hearing, the magistrate granted Father's motion in part and overruled it in part. The court denied his request to alter the order that the parties share in transportation costs. However, it reduced Grandmother's companionship time in the summer. The magistrate ordered in part:

1. Grandmother shall have visitation over one-half of the summer break, which is four weeks. She is granted four consecutive weeks to always include the July 4th holiday, which coincides with her annual family reunion. Grandmother shall notify father by May 1st of every year as to the four, consecutive weeks she chooses.

2. In odd numbered years, beginning in 2025, Grandmother shall have visitation over the child's fall break. In even numbered years, beginning in 2026, she shall have visitation over the spring break.

    3.   Grandmother shall continue to have visitation over the winter break, which shall continue to be divided pursuant to the prior Court order of March 29, 2023.

(February 10, 2025 Magistrate's Decision.)  Although the court reduced Grandmother's visitation by approximately two weeks during the summer, it increased her visitation every other year by adding one week on an alternating basis during the child's fall break from school.  This week was ordered to alternate with the previously ordered spring break week, for a total of approximately six total weeks of companionship every year.  Thus, the court reduced her time by one week every other year and by two weeks in alternating years.

{¶15} Grandmother objected, contending the court arbitrarily reduced her time without undertaking the best interest analysis.  She also claimed the reduction was in violation of our prior decision directing the court on remand to grant her "additional visitation."

{¶16}  In Father's response, he asserted that D.M.W. needs a relationship with his sister.  Grandmother's reply argued Father's response was based on facts and allegations not supported by evidence or argument raised at the hearing.  Grandmother's supplemental objection asserted Father did not have court-ordered visitation with the child's half-sister, who lives in a different state.

{¶17} The trial court overruled Grandmother's objections and found the magistrate's best interest analysis was ascertainable from its decision.  The trial court emphasized that the modification to the companionship time was slight and was a two-week reduction in time during the summer, but that it added one week in the spring or fall.  The trial court also concluded the magistrate's consideration of the minor's time with his sister was valid.  It adopted the magistrate's decision.  (April 16, 2025 Judgment.)

{¶18} Grandmother raises two assignments of error on appeal.

Assignments of Error

{¶19} We collectively address Grandmother's assignments of error, which assert:

"[1.]  The Court abused its discretion in reducing the visitation previously awarded to the Appellant after remand from the Court of Appeals."

Case No. 25 BE 0021

"[2.] The Appellee failed to meet his burden of proof in showing how a reduction in visitation is in the best interest of the minor child."

**{¶20}** When a parent is deceased, grandparent visitation rights are governed by R.C. 3109.11. This statute allows a court to grant a grandparent reasonable visitation when it is in the best interest of the child. *In re I.R.H.*, 2014-Ohio-1180, ¶ 16 (7th Dist.); *In re Whitaker*, 36 Ohio St.3d 213 (1988). "[T]he single most important individual in a case addressing visitation rights is the child." *Id.* at 217.

**{¶21}** Neither party directs our attention to a statutory provision governing a request to modify or reduce grandparent visitation after it is granted, and this court has not located one. Pursuant to R.C. 3109.051(C) and (D), a trial court must consider all relevant factors, including the ones listed therein. Furthermore, the Ohio Supreme Court in *Whitaker* held in part that "the factors set forth in R.C. 3109.04(C) with respect to determining the child's best interest in custody cases apply equally to visitation cases. The trial court must weigh these and other relevant factors in determining the child's best interest in visitation cases." *Id.* at 217. Thus, upon considering all of the applicable factors, a trial court must determine whether a modification is in the best interest of the child.

**{¶22}** As an appellate court, we generally review a trial court's application of the best interest factors applicable to grandparent visitation orders for an abuse of discretion. *In re I.R.H.* at ¶ 35 (7th Dist.). And absent a determination that the trial court's decision was arbitrary, unreasonable, or unconscionable, we must affirm. *Id.*

**{¶23}** The factors set forth in R.C. 3109.04(C) include: "the character, family relations, past conduct, earning ability, and financial worth of each parent and [the court] may order the parents and their minor children to submit to medical, psychological, and psychiatric examinations."

**{¶24}** Further, R.C. 3109.051(C) and (D) state in part:

(C) When . . . establishing a specific parenting time or visitation schedule, and when determining other parenting time matters under this section or section 3109.12 of the Revised Code or visitation matters under this section or section 3109.11 or 3109.12 of the Revised Code, *the court*

*. . . shall consider all other relevant factors, including, but not limited to, all of the factors listed in division (D) of this section.*

(D) In . . . establishing a specific parenting time or visitation schedule, and in determining other parenting time matters under this section or section 3109.12 of the Revised Code or visitation matters under this section or section 3109.11 or 3109.12 of the Revised Code, *the court shall consider all of the following factors*:

(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;

(2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child . . .;

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

(Emphasis added.)

{¶25} A review of the applicable factors and the record reveal the following. As Grandmother contends, she has a close bond and relationship with the child that should continue to be facilitated. Grandmother has been one of the primary caregivers since his

birth.  The evidence also shows that D.M.W. loves both his Father and Grandmother.  He also has a bond with his half-sister.

{¶26}  As for the geographical location of the residences of each party and the distance between those residences, there is a significant distance between the Father's home in Texas and Grandmother's in Ohio.  D.M.W.'s sister also lives out of state.  The cost and time of travel prohibit shorter and more frequent visits and support granting longer visitation periods.

{¶27}  The child's age and the parties' available time and schedules, Father's work and deployment schedule, plus D.M.W.'s school schedule favor awarding larger blocks of time with Grandmother during school breaks.  Further, D.M.W. was 11 years old at the time of the hearing.  There is no evidence at the hearing establishing the age of his sister.

{¶28}  The evidence also shows D.M.W. is well adjusted in both homes.  In addition, the child has previously expressed a desire not to have to choose one relationship over the other, which is consistent with a grant of continued and regular companionship with Grandmother.

{¶29}  There was nothing before the court showing D.M.W. was unhealthy or unsafe in either environment.  There was also no testimony or evidence supporting Father's claims that Grandmother was fabricating illnesses or medical issues.  Despite Father's claims, he presented no evidence or testimony at the hearing about Grandmother's mental health.

{¶30}  As far as the amount of time that will be available for the child to spend with siblings, based on Father's limited testimony, it seems he will have summer visitation with D.M.W.'s sister.  Thus, this factor supports the trial court's decision to slightly reduce Grandmother's summer break visitation.

{¶31}  The record also shows Father has had an issue facilitating Grandmother's telephone visits.  Father has been held in contempt of court for failure to facilitate Grandmother's visitation.  Grandmother, on the other hand, has ensured the child even visits his paternal relatives during her companionship time with D.M.W.  This factor supports Grandmother's arguments that her visitation time should not be reduced.

{¶32}  There was no evidence that either Father or Grandmother have been convicted of any crimes or abused a child.

Case No. 25 BE 0021

{¶33} Father wishes to cease or reduce Grandmother's companionship time with the child. This is despite the fact that she has a loving and close relationship with the child and even facilitates D.M.W.'s visits with Father's relatives in Ohio during her time. Thus, this factor tends to support Grandmother's position.

{¶34} While the evidence supports a continued, loving relationship with both parties, we decline to find an abuse of discretion upon considering the best interest factors. Father's testimony, although limited, explained Father had parenting time with D.M.W.'s sister during the summer months and she lived in another state as well. Thus, Father's increased time during the summer with D.M.W. should enable D.M.W. to spend more time with his sister. Father's need to facilitate that sibling time during summer break is a fair and reasonable consideration, which is neither unconscionable or arbitrary. Moreover, as the trial court noted, the reduction in Grandmother's time was slight—a one-week reduction in alternating years and a two-week reduction every other year.

{¶35} In light of the foregoing, both of Grandmother's assignments of error lack merit.

### Conclusion

{¶36} For the following reasons, we affirm the trial court's decision.


Waite, J., concurs.

Hanni, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Juvenile Division of Belmont County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**